James HANE, Appellant,

v.

HALLOCK FARMERS MUTUAL IN-SURANCE COMPANY, Respondent.

No. 47026.

Supreme Court of Minnesota.

Sept. 23, 1977.

Richard C. Smith and Larry Meuwissen, Minneapolis, for appellant.

Brink, Sobolik, Severson & Vroom and Ronald C. Vroom Hallock, for respondent.

Heard before TODD, YETKA, and PLUNKETT, JJ., and considered and decided by the court en banc.

TODD, Justice.

James Hane purchased a farm from Paul Fish in December 1969 under a contract for deed. Pursuant to the contract, Hane procured fire insurance on the house and buildings, in addition to insurance covering his personal property. On April 17, 1972, due to financial reverses and a pending cancellation of the contract for deed for nonpayment, Hane assigned his vendee's interest in the contract to Walter Braget in exchange for Braget's making a payment to Fish under the contract. At the same time, an informal understanding was apparently reached allowing Hane to participate in the operation of the farm with Braget and also affording him an opportunity to repurchase the property at a later date. On April 26, 1972, the farmhouse was destroyed by fire and Hane subsequently brought an action to recover for the loss of the home under his fire insurance policy. There was conflicting evidence introduced at trial concerning whether Hane had effectively canceled his insurance coverage on the farmhouse prior to its destruction by fire. The jury returned a special verdict finding that Hane had canceled his insurance coverage prior to the date of the fire and that he did not possess an insurable interest in the home after the assignment of his interest under the contract to Braget. We affirm.

In December 1969, James Hane purchased a 1,000-acre farm including all its buildings near Halma, Minnesota, from Paul Fish under a contract for deed. Under the contract for deed, Hane made a $10,000 downpayment against the total purchase price of $86,000. The provisions of the contract required Hane to pay Fish approximately $5,600 on December 15 each year for a period of 20 years. Also, in accordance with the terms of the contract, Hane secured a fire insurance policy from Hallock Farmers Mutual Fire Insurance Company[1] covering the house and other buildings on the property. With the same policy, he included coverage for his personal property and certain equipment and machinery used in the operation of the farm. The farmhouse was originally insured against loss for $20,000, which amount was subsequently increased to $25,000. The loss-payable clause named Paul Fish as the mortgagee of the buildings and designated that any loss was payable to him to the extent of his interest.

Hane utilized the property as a farm almost from the date of purchase. Unfortunately, Hane's farming operation was anything but a success, as he incurred financial setbacks almost from its inception. Due to his poor financial condition, Hane worked out an agreement with Fish to make only the interest payment on the contract for deed in 1970, with the principal payment to be delayed until the following year. However, as Hane entered the winter of 1971–1972, his financial situation had worsened and he was unable to make the December 1971 payment on the contract.

Finally, on March 17, 1972, Fish served a cancellation notice on Hane, allowing him 30 days to make the delinquent payment on the contract or suffer a forfeiture of the property. At this point, Hane commenced a vigorous solicitation of friends and associates in an effort to obtain the necessary financing to avoid cancellation of the contract. He eventually secured an agreement from the Braget brothers, Richard, Walter, and Kenneth, to assist him in avoiding cancellation. Although the proposed arrangement between Hane and the Braget brothers was not reduced to writing and was just "in the planning stages," the discussions included the possibility of forming a type of joint venture between the parties in the operation of a cattle feeding business.

On April 17, 1972, Hane and the Bragets met in his attorney's office where Hane executed an assignment of his vendee's interest in the farm and property under the contract in exchange for the Bragets' pay-

1. Hallock Farmers Mutual Fire Insurance Company is organized as an assessable, township mutual insurance company under Minnesota statutes. See, Minn. St. 67A.01 to 67A.26.

ing Fish approximately $7,000 to avoid cancellation of the contract. At this meeting, there was also an informal discussion and agreement reached between the parties allowing Hane to remain in the home until the school session was completed in June. It was also agreed that Hane would have the opportunity to repurchase the property from the Bragets in the future if he so desired.

On April 24, 1972, Walter Braget filed an application with Hallock Farmers Mutual for insurance coverage on the farmhouse in the amount of $15,000, which was acceptable to Fish, the contract-vendor. Mrs. Elwood Carlson, an employee of Hallock Farmers Mutual, testified that Hane telephoned the company the following day, April 25, 1972, at approximately 3:30 p. m., and requested the cancellation of his fire coverage on the home. Mrs. Carlson testified that, on the same afternoon, she completed the cancellation of coverage on the farmhouse as a regular endorsement to the policy, and, consistent with Hane's request, continued the insurance coverage on his personal property.

Hane disputes Mrs. Carlson's testimony concerning the cancellation of the insurance coverage on the farmhouse. Hane testified that he telephoned the insurance company on April 25, 1972, around 4:30 p. m. and talked to Mrs. Carlson concerning his insurance coverage. He also testified that he told Mrs. Carlson to cancel the insurance coverage on his machinery and livestock, which had been previously transferred to a bank. While Hane admits to questioning Mrs. Carlson concerning whether Walter Braget had secured insurance on the premises, he denies the fact that any instruction was given to Mrs. Carlson to cancel his fire insurance on the home.

On April 26, 1972, a fire completely destroyed the farmhouse. Hane was eventually reimbursed by the insurance company for the loss of his personal property in the fire to the policy limits and was also paid the unearned premiums of the fire insurance policy on the farmhouse. Fish and the Bragets were paid $15,000 by the insurance company for the loss of the home, which funds were deposited in a joint bank account and employed to fund a portion of the cost incurred in constructing a new home on the property. Hane also filed a claim with the insurance company for payment under his fire insurance policy on the home, which was denied.

Hane then brought this action in an attempt to recover the proceeds under his fire insurance policy. After a trial, the jury returned a special verdict determining that Hane did not have an insurable interest in the house at the time it was destroyed and that he had canceled his fire insurance coverage on the house on April 25, 1972, a day before the fire.

Hane presents the following issues for consideration on appeal:

(1) Whether he possessed an insurable interest in the farmhouse at the time of its loss.

(2) Whether he canceled his fire insurance coverage on the house on April 25, 1972.

(3) Whether the members of the jury, who were policyholders of Hallock Farmers Mutual Fire Insurance Company, a township mutual insurance company, were incompetent to sit as jurors.

(4) Whether defense counsel's final argument was proper.

(5) Whether the trial court's action in taxing certain costs against the plaintiff was proper.

We believe that the insurable interest issue is dispositive of this case. The question of whether a party has an insurable interest in a given parcel of property is a question of fact for the jury. See, *Nathan v. St. Paul Mutual Insurance Co.*, 243 Minn. 430, 68 N.W.2d 385 (1955). In the instant case the jury determined that Hane did not possess an insurable interest in the farmhouse on the date of the fire. In *Banner Laundry Co. v. Great Eastern Casualty Co.*, 148 Minn. 29, 34, 180 N.W. 997, 999 (1921), it was stated that in order for an individual to have an insurable interest in property—

" * * * it is not necessary that the insured should have an absolute right of property, and that he has an insurable interest if, by the destruction of the property, he will suffer a loss, whether he has or has not any title to, lien upon, or possession of the property itself."

See, also, *Nathan v. St. Paul Mutual Insurance Co. supra.*

In the present case, Hane secured a 3-year fire insurance policy on the dwelling upon entering the contract for deed with Fish. Hane was required to purchase insurance coverage for the property by a provision included in the contract for deed in order to protect his interest as a contract-vendee and the interest of Fish, the contract-vendor. When the Bragets paid Fish $7,000 to avoid cancellation of Hane's interest under the contract for deed, there was an assignment of interest executed by which Hane and his wife transferred all their interest under the contract to Walter Braget. By assigning his vendee's interest in the contract for deed to Walter Braget on April 17, 1972, Hane divested himself of all legal and equitable rights in the property. Hane testified that under the informal understanding reached with the Bragets he was afforded an opportunity to repurchase the farm in the future. He contends that this created a property right in his favor and therefore an insurable interest in the farm. The difficulty encountered with this argument is that while Hane possessed an opportunity to repurchase the farm, he was not obligated to do so. Since Hane had assigned the vendee's interest under the contract for deed and did not have an obligation to repurchase the farmhouse, he could not suffer a loss upon its destruction. Compare with *Northwestern National Bank of Minneapolis v. Maher,* Minn., 258 N.W.2d 623 (1977), filed herewith. Thus, we hold that Hane did not possess an insurable interest in the farmhouse on the date of its destruction.

Having disposed of the case on the above issue, we need not consider whether the evidence supports the jury verdict finding that Hane had canceled his policy on the farmhouse before its destruction by fire. Further, we have considered the remaining assignments of error and find that they were not properly raised on appeal.

Affirmed.