**ALAMO COMMUNITY COLLEGE DISTRICT, Appellant,**

v.

**BROWNING CONSTRUCTION COMPANY, Appellee.**

No. 04–02–00808–CV.

Court of Appeals of Texas, San Antonio.

Jan. 14, 2004.

Rehearing Overruled Feb. 9, 2004.

Reba Bennett Kennedy, Law Offices of Reba Bennett Kennedy, Wade B. Shelton, Shelton & Valadez, P.C., and William T. Armstrong, III, Langley & Banack, Inc., San Antonio, for Appellant.

P. Michael Jung, Kenneth S. Beat, Strasburger & Price, L.L.P., Dallas, Stanley W. Curry, Jr., Nicole Betters, Richard C. McSwain, Curry & Associates, P.C., San Antonio, for Appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

This case arises from a breach-of-contract suit between Browning Construction Company ("Browning") and Alamo College Community District ("ACCD"). At trial, the jury awarded Browning, the plaintiff, over $3,000,000 on its breach-of-contract claim. The trial court entered judgment in accordance with the verdict. ACCD, the defendant at trial, appeals the judgment of the trial court in fourteen issues. Browning, appellee and cross-appellant, brings one issue on appeal. We affirm the judgment of the trial court.

### BACKGROUND

ACCD and Browning entered into a contract whereby Browning agreed to serve as the general contractor for the construction of a new campus for ACCD. After disagreements over delay, Browning sued ACCD for breach of contract and won damages of over $3,000,000. The key issue in the suit was whether Browning could collect damages for delay when the contract had a no-damages-for-delay clause. The jury answered yes, because 1) ACCD had waived its right to rely on that clause; 2) ACCD is estopped from relying on that clause; 3) ACCD and Browning had agreed to modify the clause; 4) the delays encountered by Browning were caused by the active interference of ACCD; 5) ACCD committed unreasonable delay such that Browning would have been justified in abandoning the contract; and 6) ACCD committed fraud, misrepresentation, or other bad faith. Browning also sued ACCD for violations of the Prompt Pay Act and quantum meruit. The jury did not find for Browning on these causes of action.

ACCD, appellant and cross-appellee, presents the following issues for review:

1) Does sovereign immunity protect ACCD from suit? Does sovereign immunity protect ACCD from tort liability?

2) Did ACCD have a duty to Browning for design errors?

3) Was it proper for the trial court to instruct the jury that the architects were agents of ACCD?

4) Was it error for the trial court to permit the jury to assess damages for

Browning's liability to its subcontractors?

5) Does Jury Question 5 submit an offensive theory of estoppel, and if so, was it error for the trial court to submit it?

6) Was it error for the trial court to omit from Jury Question 1 an instruction on the specific contractual provisions at issue? Does Jury Question 1(b) violate *Casteel?*

7) Did the trial court submit an improper measure of damages?

8) Was there legally and factually sufficient evidence of causation to support a finding of damages for delay?

9) Was there legally and factually sufficient evidence of consideration to support the jury's finding that ACCD and Browning agreed to modify the contract?

10) Was there legally and factually sufficient evidence of design error?

11) Did the trial court abuse its discretion in denying ACCD's motion for new trial?

12) Was there legally and factually sufficient evidence to support the jury's finding that ACCD waived its right to rely on the no-damages-for-delay clause as a defense to Browning's claims?

13) Was there legally and factually sufficient evidence to support the jury's finding that ACCD breached the contract?

14) Was there legally and factually sufficient evidence to support the jury's finding of overhead cost damages?

Browning, appellee and cross-appellant, presents the following issue for review: Did the trial court err in failing to render judgment notwithstanding the verdict for Browning on its Prompt Pay Act claim?

## SOVEREIGN IMMUNITY

### A. *Immunity from Suit*

■ In its first issue, ACCD argues that sovereign immunity protects it from suit.

■ Sovereign immunity defeats a trial court's subject-matter jurisdiction over a lawsuit. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638–39 (Tex.1999) (per curiam). The State may assert sovereign immunity from suit in a plea to the jurisdiction. *Id.* at 638. Because the question of subject-matter jurisdiction is a question of law, we review *de novo* a trial court's order denying a jurisdictional plea based on sovereign immunity. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998).

ACCD argues that sovereign immunity protects it from suit. We have specifically held, however, that junior college community districts like ACCD are *not* immune from suit:

ACCD is a junior college community district organized pursuant to chapter 130 of the Texas Education Code. Under chapter 130, ACCD's board of trustees' "powers and duties" "in the ... management and control of the junior college" are governed by "the general law governing the ... management and control of independent school districts insofar as the general law is applicable." Part of the "general law" governing the management and control of independent school districts is the Texas Legislature's consent to suits against "[t]he trustees of an independent school district ... in the name of the district...."

... By subjecting junior college districts like ACCD to the same general law applicable to independent school districts, it appears to us, clearly and unambiguously, the Texas Legislature

granted its consent to sue junior college community districts and we so hold.

*Alamo Cmty. Coll. Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 747–48 (Tex.App.-San Antonio 1998, pet. denied) (citations omitted), *abrogated on other grounds by Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 595–98 (Tex.2001).

In *Obayashi*, we followed the supreme court's holding in *Missouri Pacific Railroad Co. v. Brownsville Navigation District*, 453 S.W.2d 812 (Tex.1970). *See Obayashi*, 980 S.W.2d at 748 (citing *Mo. Pac.*, 453 S.W.2d at 813). In *Missouri Pacific*, the question was whether a 1925 statute clearly and unambiguously waived Brownsville Navigation District's immunity from suit. *Mo. Pac.*, 453 S.W.2d at 813. The statute provided: "All navigation districts established under this Act may, by and through the navigation and canal commissioners, *sue and be sued* in all courts of this State in the name of such navigation district. . . ." *Id.* (emphasis added). The court held: "In our opinion [the statute] is quite plain and gives general consent for District to be sued in the courts of Texas in the same manner as other defendants." *Id.*

Similarly, the statute we relied on in *Obayashi* provides: "The trustees of an independent school district constitute a body corporate and in the name of the district may acquire and hold real and personal property, *sue and be sued*, and receive bequests and donations or other moneys or funds coming legally into their hands." TEX. EDUC.CODE ANN. § 11.151(a) (Vernon 1996) (emphasis added). Thus, both *Obayashi* and *Missouri Pacific* find a waiver of sovereign immunity where the Legislature provides that the governmental entity may "sue and be sued." *Mo. Pac.*, 453 S.W.2d at 813; *Obayashi*, 980 S.W.2d at 748.

ACCD argues that two recent Texas Supreme Court cases, *Texas Natural Resource Conservation Commission v. IT–Davy*, 74 S.W.3d 849 (Tex.2002) and *Travis County v. Pelzel & Associates, Inc.*, 77 S.W.3d 246 (Tex.2002), suggest that community college districts like ACCD *are* immune from suit. We disagree.

In *IT–Davy*, a general contractor (IT–Davy) contracted with the Texas Water Commission (predecessor of the Texas Natural Resource Conservation Commission) to clean up a hazardous waste site in Houston. *IT–Davy*, 74 S.W.3d at 851. IT–Davy cleaned the site, and the TNRCC paid IT–Davy the full contract price. *Id.* IT–Davy claimed, however, that it was owed *additional* monies under the contract because materially different site conditions increased its clean-up costs. *Id.* The TNRCC refused to pay these additional costs, and IT–Davy brought suit against the TNRCC for breach of contract, negligent misrepresentation, quantum meruit, and promissory estoppel. *Id.* at 851–52. In response, the TNRCC filed a plea to the jurisdiction, alleging that sovereign immunity barred IT–Davy's claims. *Id.* at 852. The trial court denied the plea. *Id.* The TNRCC then filed an interlocutory appeal. *Id.* The court of appeals affirmed the trial court's order, holding that IT–Davy's allegations were "sufficient to show that the [TNRCC] has engaged in conduct, beyond the mere execution of a contract, that waives its immunity from suit." *IT–Davy*, 74 S.W.3d at 851 (citation omitted) (brackets in original).

At the supreme court, IT–Davy argued that the TNRCC waived its immunity from suit by fully accepting benefits under the contract. *Id.* at 856. In support of its argument, IT–Davy cited a footnote from *Federal Sign v. Texas Southern University*, 951 S.W.2d 401 (Tex.1997), providing that there may be circumstances "where

the State may waive its immunity by conduct other than simply executing a contract...." *See IT–Davy,* 74 S.W.3d at 856 (quoting *Federal Sign,* 951 S.W.2d at 408 n. 1). Thus, the issue for the supreme court in *IT–Davy* was whether Texas law allows governmental entities to waive their immunity by conduct. *See id.* (noting that several courts of appeals have relied on the footnote in *Federal Sign* to create a judicially-imposed, equitable waiver of immunity from suit). The court held:

> We again affirm that it is the *Legislature's* sole province to waive or abrogate sovereign immunity.... Because we have consistently held that only the Legislature can waive sovereign immunity from suit, allowing other governmental entities to waive immunity by conduct that includes accepting benefits under a contract would be fundamentally inconsistent with our established jurisprudence and with the existing legislative scheme. Accordingly, we reject IT–Davy's argument that we should fashion such a waiver-by-conduct exception in a breach-of-contract suit against the State.

*Id.* at 857 (emphasis added).

The court also found that the TNRCC's sovereign immunity was not waived by contract, legislative consent under sections 5.351 and 5.352 of the Texas Water Code, or legislative consent in the Declaratory Judgment Act. *Id.* at 856.

In the case before us, Browning does not argue that ACCD waived its immunity by conduct. Accordingly, the waiver-by-conduct holding of *IT–Davy* does not apply here. Additionally, nowhere does the *IT–Davy* court address sovereign immunity for community college districts under the Texas Education Code, the issue in this case. Rather, *IT–Davy* reaffirms that it is the *Legislature's* sole province to waive sovereign immunity. *Id.* at 857. We found in *Obayashi* that the Legislature

waived sovereign immunity for community college districts by enacting sections 130.084 and 11.151(a) of the Texas Education Code. *Obayashi,* 980 S.W.2d at 747–48. Accordingly, with respect to waiver by statute, *Obayashi* and *IT–Davy* are entirely consistent.

ACCD next argues that the *Pelzel* case suggests that community college districts like ACCD are immune from suit. In *Pelzel,* a construction company (Pelzel) sued Travis County for breach of contract, seeking monies allegedly due under the contract. *Pelzel,* 77 S.W.3d at 247. Travis County filed a plea to the jurisdiction, alleging sovereign immunity. *Id.* The trial court denied the plea. *Id.* Travis County brought an interlocutory appeal, and the court of appeals affirmed the trial court's order, concluding that Travis County waived its immunity by conduct. *Id.* at 247–48. The court of appeals further concluded that because Pelzel complied with section 89.004 of the Texas Local Government Code by presenting its claim to the county commissioners court before filing suit, the trial court had jurisdiction. *Id.* at 247 (citation omitted). Section 89.004 provides: "[A] person may not file suit on a claim against a county ... unless the person has presented the claim to the commissioners court and the commissioners court neglects or refuses to pay all or part of the claim...." TEX. LOC. GOV'T CODE ANN. § 89.004(a) (Vernon Supp.2003). Thus, the issue for the supreme court in *Pelzel* was whether the presentment-of-claim language in section 89.004 clearly and unambiguously waives Travis County's immunity from suit. The court held: "This statutory language does not clearly and unambiguously waive immunity from suit." *Pelzel,* 77 S.W.3d at 249. The court goes on to cite statutes that *do* clearly and unambiguously waive immunity from suit. *See id.* (citing, as an example of a clear

and unambiguous waiver of suit, section 101.025(a) of the Texas Civil Practices and Remedies Code, which provides that "[s]overeign immunity to suit is waived and abolished to the extent of liability created by this chapter"). The court also distinguishes section 89.004(a) from the statute preceding it, stating: "Originally, the statute contained 'sue and be sued' language, arguably showing intent to waive sovereign immunity for suits against counties." *Id.* at 249–50 (citing *Mo. Pac.*, 453 S.W.2d at 813).

ACCD relies on this language to support its argument that ACCD is immune from suit. As shown by the direct quote above, however, *Pelzel* does not resolve the question whether "sue and be sued" language waives sovereign immunity. *Id.* Nor does *Pelzel* overrule *Missouri Pacific*. *Id.* We are bound by the authority of *Missouri Pacific* unless the supreme court overrules it. *Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993); *In re K. S.*, 76 S.W.3d 36, 49 (Tex.App.-Amarillo 2002, no pet.). Accordingly, we must continue to follow *Missouri Pacific*.

We recognize that the Fifth Court of Appeals has interpreted *IT–Davy* and *Pelzel* to mean that the Legislature did not intend to waive sovereign immunity for school districts. *See Satterfield & Pontikes Constr., Inc. v. Irving Indep. Sch. Dist.*, 123 S.W.3d 63, 66 (Tex.App.-Dallas, 2003, no pet. h.) (holding that the "sue and be sued" language in section 11.151 of the Texas Education Code merely speaks to the City's capacity to sue and its capacity to be sued when immunity *has* been waived). The effect of the court's decision, however, is to improperly overrule *Missouri Pacific*. *Satterfield*, at 81 (Lang, J., dissenting).We believe that we are bound by *Missouri Pacific* unless the supreme court overrules it. Therefore, we reiterate our holding in *Obayashi* and hold that

because the Legislature clearly and unambiguously waived immunity for community college districts, ACCD is not immune from suit. *Obayashi*, 980 S.W.2d at 748. Accordingly, we overrule this issue on appeal.

*B. Immunity from Liability*

■ ·ACCD next argues that sovereign immunity protects it from liability.

■ Immunity from liability protects the state from judgment, even if the legislature has expressly consented to suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999) (per curiam). Generally, junior college districts are not subject to tort liability for property damage, personal injury, or death caused by the wrongful act or omission or the negligence of an employee, except when the claim involves a motor vehicle. Tex. Civ. Prac. & Rem.Code Ann. § 101.001(3)(B) (Vernon Supp.2002); §§ 101.021, 101.051 (Vernon 1997). ACCD argues, therefore, that ACCD is immune from the fraud claims for which it was found liable in Jury Question 11.

Jury Question 11, however, is not a fraud question. Rather, it asks whether ACCD's fraud caused the delays. (The jury's answer of "yes" prevents ACCD from relying on its no-damages-for-delay clause.) Nowhere in Browning's petition does it assert a cause of action for fraud. Also, contrary to ACCD's assertion, the damages the jury assessed against ACCD are based solely on breach of contract.

Because fraud is not a cause of action in the case, there are no fraud damages from which to find ACCD immune. Accordingly, we overrule ACCD's immunity-from-liability issue.

**DUTY FOR DESIGN ERRORS**

■ The jury assessed $2,624,802.51 in damages against ACCD because it found

ACCD breached the contract in several ways, including failing or refusing to correct design errors.[1] ACCD argues that these damages are unenforceable because the contract does not impose a duty on ACCD for such design errors. Thus, the issue turns upon interpretation of the contract.

■ Interpretation of an unambiguous contract is a question of law and we are not required to defer to any interpretation afforded by the trial court. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999); *Birnbaum v. Swepi LP*, 48 S.W.3d 254, 257 (Tex.App.-San Antonio 2001, pet. denied). Accordingly, we review the trial court's construction of an unambiguous contract *de novo. MCI*, 995 S.W.2d at 651.

■ Texas law provides: "[U]nless so expressed in the contract, an owner that furnishes a prime contractor plans and specifications is not a guarantor of the sufficiency of the plans and specifications." *See City of San Antonio v. Forgy*, 769 S.W.2d 293, 297 n. 1 (Tex.App.-San Antonio 1989, writ denied) (citing *Lonergan v. San Antonio Loan & Trust Co.*, 101 Tex. 63, 104 S.W. 1061 (1907)). Texas law further provides:

> If there be any obligation resting upon the [owner], as guarantor of the sufficiency of the specification, it must be found expressed in the language of the contract, or there must be found in that contract such language as will justify the court in concluding that the parties intended that the [owner] should guarantee the sufficiency of the specifications to [the contractor].

*Lonergan*, 104 S.W. at 1066.

Here, the contract between ACCD and Browning provides:

> The Contractor shall carefully study and compare the Contract Documents with each other and with information furnished by the Owner pursuant to Subparagraph 2.2.2 and shall at once report to the Architect errors, inconsistencies or omissions discovered. The Contractor shall not be liable to the Owner or Architect for damage resulting from errors, inconsistencies or omissions discovered. The Contractor shall not be liable to the Owner or Architect for damage resulting from errors, inconsistencies or omissions in the Contract Documents unless the Contractor recognized such error, inconsistency or omission and failed to report it to the Architect. If the Contractor performs any construction activity knowing it involves a recognized error, inconsistency or omission in the Contract Documents without such notice to the Architect, the Contractor shall assume appropriate responsibility for such performance and shall bear an appropriate amount of the attributable costs for correction.

This paragraph indicates that ACCD was to be responsible for design errors. Additionally, it is nearly identical to language that the Fourteenth Court of Appeals found "intended that the owner guarantee the sufficiency of the specifications." *N. Harris County Junior Coll. Dist. v. Fleetwood Constr. Co.*, 604 S.W.2d 247, 253 (Tex.Civ.App.-Houston [14th Dist.] 1980,

---

1. Jury Question 1(b) provides:
 Did ACCD fail to comply with the Contract in any of the following respects: Failing to provide complete and accurate drawings to Browning; failing to obtain building permits in a timely manner; failing or refusing to correct design errors; or providing inaccurate or incomplete information in response to Browning's request for information?

writ ref'd n.r.e.). In *Fleetwood,* the contract provided:

> The Contractor shall carefully study and compare the Contract Documents and shall at once report to the Architect any error, inconsistency or omission he may discover. The Contractor shall not be liable to the Owner or the Architect for any damages resulting from any such errors, inconsistencies or omissions in the Contract Documents.

*Id.*

Because the contract in this case contains language indicating ACCD had a duty to Browning for design errors, we overrule ACCD's second issue.

### AGENCY

The jury instructions in this case provided: "ACCD means Alamo Community College District, the owner of the project and the defendant in this lawsuit, and its agents, including Beaty Sanders Chesney Morales & Fly, a Joint Venture, the architects on this project." ACCD argues that the trial court erred in so instructing the jury because 1) Browning did not plead the architects as agents; and 2) it was improper for the trial court to instruct the jury that the architects were agents *as a matter of law* rather than submitting agency as a fact question for the jury to answer.

We review whether an instruction properly instructed the jury on a matter of law *de novo. M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 631 (Tex. App.-Houston [14th Dist.] 1992, writ denied) (asserting that an instruction is improper if it misstates the law); *Villareal v. Reza,* 236 S.W.2d 239, 241 (Tex.Civ.App.-San Antonio 1951, no writ) (finding an instruction that fails to instruct the jury on the burden of proof issue erroneous).

A party alleging agency has the burden of pleading and proving the agency relationship. *S. County Mut. Ins. Co. v. First Bank & Trust,* 750 S.W.2d 170, 172 (Tex.1988). If no special exceptions are filed, we must construe the pleadings liberally in favor of the pleader. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex.2000). Here, Browning alleged "ACCD and its Architect" in its petition. This language shows that Browning was seeking to hold ACCD liable for the wrongful acts of its architects. Moreover, ACCD failed to file special exceptions, so we must construe the pleadings liberally in favor of the pleader. *Id.* Accordingly, we find that Browning did plead the architects as agents.

Second, Texas law provides that whether an agency relationship exists is a question of fact unless the evidence establishes the relationship as a matter of law. *Bhalli v. Methodist Hosp.,* 896 S.W.2d 207, 210 (Tex.App.-Houston [1st Dist.] 1995, writ denied). A court can determine, as a matter of law, the existence of an agency relationship from an agreement between the parties. *Ward v. Prop. Tax Valuation, Inc.,* 847 S.W.2d 298, 300 (Tex.App.-Dallas 1992, writ denied).

An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Tenn.-La. Oil Co. v. Cain,* 400 S.W.2d 318, 325 (Tex.1966). Here, the contract provides that the architects are authorized to do the following: 1) review and certify amounts due the contractor and issue certificates for payment in such amounts; 2) reject work that does not conform to contract documents; 3) review and approve or take other action on submittals, including shop drawings, product data, and samples; 4) prepare change orders and directives; 5) conduct inspections to determine dates of substantial and

final completion; and 6) interpret and decide matters concerning performance under the contract and concerning the requirements of the contract. Because the contract provides that the architects are authorized to act on behalf of ACCD, the contract establishes the agency relationship as matter of law. Accordingly, we overrule ACCD's third issue.

### ACTIVE INTERFERENCE BY AGENTS

■ Jury Question 7 provides: "Were the delays encountered by Browning on the Project caused by the active interferences by ACCD or its agents and/or Architects?" The jury's answer of "yes" prevents ACCD from relying on its no-damages-for-delay clause.

ACCD argues that this question is improper because the law does not extend the "active interference" exception to agents. The case ACCD cites for this proposition, however, deals with two issues: 1) whether the requirement of conspicuousness applies to no-damages-for-delay clauses (the court said no); and 2) whether a judgment predicated on exceptions to a damages-for-delay clause can stand when none of the specific exceptions were presented to the jury either by issue or instruction (again, the court said no). *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 386–88 (Tex.1997). The case does not address whether the "active interference" exception applies to acts of the agent. Thus,

ACCD has failed to present any authority for its argument.

Because ACCD has offered (and we find) no legal authority for its argument, we overrule this issue on appeal.

### INSURANCE

■ ACCD next argues that the trial court erred in allowing Browning to make references to the architect's insurance coverage. ACCD points us to two places in the record where insurance is allegedly mentioned.[2] ACCD failed, however, to object in either instance. Accordingly, it has waived error. TEX.R.APP. P. 33.1(a)(1).

ACCD suggests that these references to insurance are incurable error, implying it did not have to object. This proposition, however, does not square with Texas law. *See Dennis v. Hulse,* 362 S.W.2d 308, 309 (Tex.1962) (holding that the mention of insurance does not always require reversal and that the party appealing must also show that it probably caused the rendition of an improper judgment); *Meyers v. Searcy,* 488 S.W.2d 509, 514–15 (Tex.Civ. App.-San Antonio 1972, no writ) (following *Dennis* ).

Because ACCD has waived any complaint to the alleged mentions of insurance, and because mention of insurance is not incurable error, we overrule this issue on appeal.

2. The first instance is in Browning's opening argument, where counsel uses the words "error or omission":

> There is evidence that you will see in the form of written evidence that the architect team, the different members of the architect team, would—had sent a memo to the other saying—on these change order forms—there was a change order form, the evidence will show, that Mr. Fernandez, who is the ACCD representative on the project, created a form which would say one of the items would be change to work, would be

omission or error in the documents or words to that effect, and you will see a memo within the architect team where it says to the other members, Don't ever check *error or omission.* Regardless of what the issue was, this was just a general agreement, Don't ever check that.

The second instance is where Browning asks the following question of an architect: "Do you know why your carrier, your E and O carrier is paying a lawyer to represent you?"

### LIABILITY TO SUBCONTRACTORS

ACCD argues that it was error for the trial court to submit Jury Question 3(b)(4). This question asked the jury to assess damages for Browning's liability to its subcontractors: "What sum of money, if any, paid now in cash, would fairly and reasonably compensate Browning for its ... liability to subcontractors incurred by Browning to perform its work on the Project?" The jury answered: "$915,435.09." ACCD argues that it was error for the trial court to submit this question for three reasons: 1) ACCD is not in privity with the subcontractors; 2) The subcontractors did not assign their causes of action to Browning; and 3) Texas law does not recognize "pass-through" claims. Browning does not dispute the first two arguments. Thus, the issue here is whether Texas law recognizes pass-through claims.

The submission of a theory of recovery or defense is a question of law and is reviewable *de novo*. *Cont'l Cas. Co. v. Street*, 379 S.W.2d 648, 651 (Tex.1964).

In *Interstate Contracting Corp. v. City of Dallas*, 320 F.3d 539, 543–44 (5th Cir. 2003), the Fifth Circuit certified to the Texas Supreme Court the question of whether Texas recognizes pass-through claims. *Id.* The court explains:

> In breach of contract actions against the federal government, prime contractors have long been permitted to present subcontractors' claims on a pass-through basis against the government, even though the no-privity rule has barred subcontractors from recovering directly against the government. Similarly, a number of states have permitted pass-through claims in cases involving state government entities. However, the specific contours and requirements for pass-through claims vary from jurisdiction to jurisdiction. For example, some states permit pass-through claims only when there is a liquidating agreement in place that meets certain requirements, while other states permit pass-through claims when the prime contractor pleads the suit on behalf of the subcontractor and has an obligation to render the recovery to the subcontractor. The burden of proof also varies among jurisdictions. Accordingly, in light of the absence of Texas authority on these issues and the varied interpretations of these issues by other state courts, we certify the following questions to the Supreme Court of Texas and the Honorable Justices thereof.

*Id.* (footnotes omitted).

As the Fifth Circuit notes, federal law as well as a significant number of states recognize pass-through claims. *Id.; see Severin v. United States*, 99 Ct.Cl. 435 (1943) (holding that in a breach of contract claim against the federal government, a prime contractor may recover damages on behalf of its subcontractor only if the prime contractor suffered actual damages); *see also J.L. Simmons Co. v. United States*, 158 Ct.Cl. 393, 304 F.2d 886, 888 (1962) (holding that a prime contractor suffers actual damages if the prime contractor 1) has reimbursed its subcontractor for the subcontractor's damages; or 2) remains liable for such reimbursement in the future); *see also Folk Constr. Co. v. United States*, 2 Cl.Ct. 681, 685 (1983) (limiting the application of the *Severin* doctrine and holding that "[a] prime contractor is precluded from maintaining a suit on behalf of its subcontractor only when a contract clause or release completely exonerates the prime contractor from liability to its subcontractor"); *D.A. Parrish & Sons v. County Sanitation Dist. No. 4*, 174 Cal.App.2d 406, 344 P.2d 883, 888 (1959); *Roof-Techs Int'l, Inc. v. State*, 30 Kan.App.2d 1184, 57 P.3d 538, 550–53 (2002); *Bd. of County Comm'rs v. Cam Constr. Co.*, 300 Md. 643,

480 A.2d 795, 795 (1984); *Kensington Corp. v. State,* 74 Mich.App. 417, 253 N.W.2d 781, 783 (1977); *Saint Paul Dredging Co. v. State,* 259 Minn. 398, 107 N.W.2d 717, 724 (1961); *Frank Coluccio Constr. Co. v. City of Springfield,* 779 S.W.2d 550, 551–52 (Mo.1989) (en banc); *Buckley & Co. v. State,* 140 N.J.Super. 289, 356 A.2d 56, 73–74 (Ct. Law Div.1975); *Schiavone Constr. Co. v. Triborough Bridge & Tunnel Auth.,* 209 A.D.2d 598, 599–600, 619 N.Y.S.2d 117 (1994); *Metric Constructors, Inc. v. Hawker Siddeley Power Eng'g, Inc.,* 121 N.C.App. 530, 468 S.E.2d 435, 438–39 (1996); *Clark–Fitzpatrick, Inc. v. Gill,* 652 A.2d 440, 449 (R.I.1994).

In *United States v. Blair,* 321 U.S. 730, 737–38, 64 S.Ct. 820, 88 L.Ed. 1039 (1944), the Supreme Court explains the legal reasoning behind pass-through claims:

> Clearly the subcontractor could not recover this claim in a suit against the United States, for there was no express or implied contract between him and the Government. But it does not follow that [the contractor] is barred from suing for this amount. [The contractor] was the only person legally bound to perform his contract with the Government and he had the undoubted right to recover from the Government the contract price for the tile, terrazzo, marble and soapstone work whether that work was performed personally or through another. This necessarily implies the right to recover extra costs and services wrongfully demanded of [the contractor] under the contract, regardless of whether such costs were incurred or such services were performed personally or through a subcontractor. [The contractor's] contract with the Government is thus sufficient to sustain an action for extra costs

wrongfully demanded under that contract.

*Id.* (citations omitted).

Courts have also noted the equity reasons for allowing such claims:

> The holdings [allowing claims for subcontracted work] are soundly based in reason and equity. They recognize that a direct claim by a subcontractor against a contractee is barred by concepts of privity as well as contractual provisions such as here, and that if the contractor himself is barred from asserting those claims, the contractee would be in the extraordinary position of being responsible to no one regardless of the nature or extent of its liabilities under its contract. No proper justification exists for such a result. Rather, the principle adopted by the cases is that the contractee should be responsible to the contractor for costs or damages resulting from the performance or breach of the contract, whether the contractor performed the work himself or sublet it to others.

*Buckley,* 356 A.2d at 73.

Furthermore, while no Texas case has specifically dealt with the issue of pass-through claims, such claims are not inconsistent with Texas law. *See N. Harris County Junior Coll. Dist. v. Fleetwood Constr. Co.,* 604 S.W.2d 247, 255 (Tex.Civ. App.-Houston [14th Dist.] 1980, writ ref'd n.r.e.) (holding that the contractor could recover for damages related to subcontracted work); *H.B. Zachry Co. v. Ceco Steel Prods. Corp.,* 404 S.W.2d 113, 116, 130 (Tex.Civ.App.-Eastland 1966, writ ref'd n.r.e.) (providing that the contractor has the exclusive right and duty to assert the same claim for its subcontractor that it would have asserted for itself had it elected to do the work done by the subcontractor).

Because federal law and a significant number of other jurisdictions recognize

pass-through claims, because equity requires it, and because pass-through claims are not inconsistent with Texas law, we uphold the jury's finding of damages based on Browning's liability to its subcontractors on appeal.

## ESTOPPEL

■ Jury Question 5 provides: "Is ACCD estopped from relying on section 8.3.3 as a defense to Browning's claims for delay damages?" The jury answered "yes." Its answer prevents ACCD from relying on its no-damages-for-delay clause.

ACCD argues that Jury Question 5 submits an offensive theory of estoppel and that it was error for the trial court to submit it. We review the submission of a theory of recovery or defense *de novo. Cont'l Cas. Co. v. Street,* 379 S.W.2d 648, 651 (Tex.1964).

■ "Estoppel is defensive in character, and its function is to preserve rights, and not to bring into being an independent cause of action." *Hermann Hosp. v. Nat'l Standard Ins. Co.,* 776 S.W.2d 249, 254 (Tex.App.-Houston [1st Dist.]1989, writ denied). Browning does not assert estoppel to bring into being an independent cause of action—its cause of action is breach of contract. To the contrary, Browning asserts estoppel to *defend* against ACCD's no-damages-for-delay clause. Question 5 does not submit an offensive theory of estoppel. Accordingly, it was not error for the trial court to submit it.

## ADDED ISSUE

In the estoppel section of its brief, Browning brings up an additional argument. It argues that section 8.3.3 is *not* a no-damages-for-delay clause because it reads that Browning shall receive "no claim for compensation for delay." In other words, Browning is arguing that the clause means that *ACCD* cannot assert

damages for delay against *Browning.* Such an argument, if we accepted it, would provide an independent ground for affirming the trial court's judgment. In other words, if section 8.3.3 is not a no-damages-for-delay clause, Browning does not need to rely on (or defend on appeal) exceptions (such as estoppel) to the clause. While Browning's reading is clever, we find it unconvincing. Accordingly, we overrule this issue on appeal.

## QUESTION 1

Jury Question 1 provides:

Did ACCD fail to comply with the Contract in any of the following respects:

a. Refusing to grant reasonable time extensions?

b. Failing to provide complete and accurate drawings to Browning; failing to obtain building permits in a timely manner; failing or refusing to correct design errors; or providing inaccurate or incomplete information in response to Browning's requests for information?

c. Refusing to make reasonable adjustments of the Contract for time impact and associated General Conditions cost relating to Change Orders 19 through 82?

d. Assessing liquidated damages against Browning without justification or cause?

ACCD argues that Jury Question 1(b) violates *Crown Life Insurance Co. v. Casteel,* 22 S.W.3d 378 (Tex.2000), because two portions of Question 1(b) are legally in question: the owner's duty to provide complete and accurate drawings, and the owner's duty to correct design errors. *Casteel* provides that "when a trial court submits a single broad-form liability question incorporating multiple theories of liability, the error is harmful and a new trial is required when the appellate court cannot

determine whether the jury based its verdict on an improperly submitted invalid theory." *Id.* at 388. Here, ACCD's failure to correct design errors cannot be an invalid theory of recovery because we have already determined that ACCD owed Browning a duty to correct such errors. Furthermore, ACCD gives us no argument or authority to support its assertion that ACCD's failure to provide complete and accurate drawings was an invalid theory of recovery. Accordingly, ACCD has waived error on this point. Tex.R.App. P. 38.1(h).

Because ACCD's failure to correct design errors is a valid theory of recovery, and because ACCD fails to provide argument or authority for its contention that failing to provide complete and accurate drawings is an invalid theory of recovery, ACCD fails to show that Question 1(b) violates *Casteel.* Accordingly, we overrule this issue on appeal.

### MEASURE OF DAMAGES

 Jury Question 3 subpart (2) asks the jury to calculate damages, if any, for "additional home office overhead costs incurred by Browning to perform its work on the Project." The question instructs the jury that damages for home office overhead costs are to be calculated "by the daily rate of overhead allocable to the Contract and multiplying it by the number of days the job was extended." [3] ACCD argues that the submission of this instruction was error because Texas law does not recognize the Eichleay method of calculating damages. Whether the trial court applied the improper measure of damages is a question of law subject to a *de novo* review. *Elias v. Mr. Yamaha, Inc.,* 33 S.W.3d 54, 60 (Tex.App.-El Paso 2000, no pet.).

ACCD cites *Chilton Insurance Co. v. Pate & Pate Enterprises, Inc.,* 930 S.W.2d 877, 892 (Tex.App.-San Antonio 1996, writ denied) for the proposition that Texas law does not recognize the Eichleay method of calculating damages. *Chilton,* however, expressly declines to decide that issue. *See id.* ("[W]e find it unnecessary to decide the propriety of using the Eichleay formula or any of its modified versions to calculate overhead damages."). Thus, ACCD has failed to present authority for its argument.

Because ACCD has failed to present authority for its contention that Texas law does not recognize the Eichleay method of calculating damages, it has waived this issue. Tex.R.App. P. 38.1(h). Accordingly, we overrule this issue on appeal.

### CAUSATION

In Jury Question 1(b), the jury found that ACCD breached the contract by failing to provide complete and accurate drawings; failing to obtain building permits in a timely manner; failing or refusing to correct design errors; or providing inaccurate or incomplete information in response to Browning's requests for information. The jury further found that the following delay damages resulted from that breach:

Additional job site costs: $716,622.28

Additional home overhead costs: $293,656.06

Additional management costs: $260,715.22

Liability to subcontractors: $915,435.09

Additional work and changed work proposals: $351,821.61

---

**3.** The jury assessed $293,656.06 in damages against Browning for home office overhead costs incurred by Browning.

Change negotiation support costs: $86,552.25

## A. Legal Sufficiency

ACCD argues that the evidence is legally insufficient to support these damages because Browning failed to provide any evidence showing that its damages were *caused by* ACCD's alleged breach.

■ An appellant attacking the legal sufficiency of an adverse finding on which he did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). The reviewing court must consider all evidence in a light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference from the evidence in such party's favor. *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex.1970). If more than a scintilla of evidence exists to support the finding, the no evidence challenge fails. *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998).

■ At trial, Browning's critical path and damages expert, Phil Apprill, testified extensively about design defects and incomplete specifications that caused Browning delay. These included defects in roof geometry, ceiling design, and window installation plans, as well as incomplete specifications for pier caps, beams, electrical services, and draft stops. Other witnesses testified in further detail about these same problems and how they caused Browning delay. These witnesses included Robert Browning, Browning's project manager, Bill Johnson, Browning's operations supervisor, and John Wall, a structural engineer. Apprill also testified to how these breaches caused delay, as well as how much delay they caused and the monetary value of that delay. Thus, Browning presented more than a scintilla of evidence that ACCD's breaches caused delay.

ACCD argues that Texas law requires that the contractor demonstrate a factual connection between *each separate* delay damage he has sustained and the actions of the owner. The cases ACCD cites, however, fail to establish such a requirement. *City of Beaumont v. Excavators & Constructors,* 870 S.W.2d 123, 140–41 (Tex. App.-Beaumont 1993, writ denied), overturns a jury's award of delay damages where there was no evidence that defendant caused plaintiff's delay damages. And in *City of Houston v. R.F. Ball Construction Co.,* 570 S.W.2d 75, 78 (Tex.Civ. App.-Houston [14th Dist.] 1978, writ ref'd n.r.e.), the plaintiff could not establish he was entitled to delay damages.

■ Because there is more than a scintilla of evidence to support the finding that ACCD's breaches caused delay, and because ACCD has provided no authority for its contention that Texas law requires that the contractor demonstrate a factual connection between *each separate* delay damage he has sustained and the actions of the owner, we overrule this issue on appeal.

## B. Factual Sufficiency

ACCD also argues that the evidence is factually insufficient to support these damages because Browning failed to provide any evidence showing that its damages were *caused by* ACCD's alleged breach.

A party attacking the factual sufficiency of an adverse finding on an issue on which the other party had the burden of proof must demonstrate that there is insufficient evidence to support the adverse finding. *Hickey v. Couchman,* 797 S.W.2d 103, 109 (Tex.App.-Corpus Christi 1990, writ denied). In reviewing an insufficiency of the evidence challenge, the court must first consider, weigh, and examine all of the

evidence which supports and which is contrary to the jury's determination. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989) (per curiam). Having done so, the court should set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

Here, ACCD fails to point out any evidence contrary to the jury's determination and as such has failed to adequately brief this issue. TEX.R.APP. P. 38.1(h). Even if ACCD had adequately briefed this issue, however, upon our review of the record as summarized above, we do not find the evidence so weak as to be clearly wrong and manifestly unjust. Accordingly, we overrule this issue on appeal.

## MODIFICATION OF CONTRACT

In Jury Question 6, the jury found that ACCD and Browning modified the contract. This finding prevents ACCD from relying on its no-damages-for-delay clause as a defense to Browning's claims. ACCD argues that the evidence is legally and factually insufficient to support the jury's finding because Browning gave ACCD no new consideration for the modification.

We do not need to decide this issue, however, because ACCD has failed to challenge the legal and factual sufficiency of the evidence supporting the jury's findings on four *other* questions that prevent ACCD from relying on its no-damages-for-delay clause. Thus, even if we were to find that the evidence of consideration is legally or factually insufficient, there remain four unchallenged jury findings preventing ACCD from relying on its no-damages-for-delay clause. Because there are four unchallenged jury findings that prevent ACCD from relying on its no-damages-for-delay clause, we need not de-

cide whether the evidence of consideration is legally or factually sufficient to support the jury's finding.

## DESIGN ERROR

ACCD next argues that there is not legally or factually sufficient evidence of design error because Browning provided no expert testimony on the standard of care of an architect. ACCD cites several cases for the proposition that a licensed architect must testify regarding the work of another licensed architect, and a directed verdict is proper absent this type of expertise being provided. ACCD fails to show us, however, why such testimony is necessary in a breach-of-contract case.

Because ACCD has failed to show how its statement of law applies to this case, it has waived this issue. TEX.R.APP. P. 38.1(h). We, therefore, overrule it on appeal.

## MOTION FOR NEW TRIAL

ACCD argues that the trial court abused its discretion by denying ACCD's motion for new trial. We review a trial court's order denying a motion for new trial under an abuse of discretion standard. *Washington v. McMillan*, 898 S.W.2d 392, 394 (Tex.App.-San Antonio, 1995, no writ). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

ACCD argues that the trial court abused its discretion by denying ACCD's motion for new trial because the evidence is factually insufficient to support the jury's finding in Question 1(c). Question 1(c) provides: "Did ACCD fail to comply with the Contract [by][r]efusing to make reasonable adjustments of the Contract for time im-

pact and associated General Conditions cost relating to Change Orders 19 through 82?" The jury answered "yes" but found no damages. Thus, with respect to Question 1(c), the jury found that ACCD owed Browning nothing.

ACCD fails to explain how a new trial could have resulted in a more favorable finding for ACCD. We do not see how the trial court could have abused its discretion in failing to grant ACCD's motion. Thus, we overrule this issue on appeal.

## WAIVER

In Jury Question 4, the jury found that ACCD waived its right to rely on its no-damages-for-delay clause as a defense to Browning's claims for delay damages. ACCD argues that the evidence of waiver is legally and factually insufficient to support the jury's finding.

Again, we do not need to decide this issue, because ACCD has failed to challenge the legal and factual sufficiency of the evidence supporting the jury's findings on four *other* questions that prevent ACCD from relying on its no-damages-for-delay clause. Thus, even if we were to find that the evidence of waiver is legally or factually insufficient, there remain four unchallenged jury findings preventing ACCD from relying on its no-damages-for-delay clause. Because there are four unchallenged jury findings that prevent ACCD from relying on its no-damages-for-delay clause, we need not decide whether the evidence of waiver is legally or factually sufficient to support the jury's finding.

## BREACH

At trial, the jury found that ACCD breached the contract in four ways: 1) by refusing to grant reasonable time extensions; 2) by failing to provide complete and accurate drawings to Browning; failing to obtain building permits in a timely

manner; failing or refusing to correct design errors; or providing inaccurate or incomplete information in response to Browning's requests for information; 3) by refusing to make reasonable adjustments of the contract for time impact and associated General Conditions cost relating to Change Orders 19 through 82; and 4) by assessing liquidated damages against Browning without justification or cause. ACCD argues that the evidence is legally and factually insufficient to support the jury's findings in all four of these breach questions. We review legal and factual sufficiency issues under the standards set out above.

 Question 1(a) provides: "Did ACCD fail to comply with the Contract [by][r]efusing to grant reasonable time extensions?" The jury answered "yes." ACCD argues that the evidence is legally and factually insufficient to support this finding. The record reflects, however, that Phil Apprill, Browning's critical path and damages expert, testified that there were 101 days of delay in Phase A of construction and 296 days of delay in Phase B. Apprill further testified that these delays were beyond Browning's control and that ACCD should therefore have granted Browning reasonable time extensions as provided by the contract. Richard Morales, the manager of the joint venture that designed the project, agreed that the contract required that Browning be given reasonable time extensions, and testified that ACCD never considered these time extensions, despite numerous requests. This is more than a scintilla of evidence that ACCD failed to comply with the contract by refusing to grant reasonable time extensions. Furthermore, the evidence is not so weak as to be clearly wrong and manifestly unjust. Accordingly, we overrule this issue on appeal.

Question 1(b) provides: "Did ACCD fail to comply with the Contract [by][f]ailing to provide complete and accurate drawings to Browning; failing to obtain building permits in a timely manner; failing or refusing to correct design errors; or providing inaccurate or incomplete information in response to Browning's requests for information?" The jury answered "yes." ACCD argues that the evidence that ACCD provided inaccurate or incomplete information in response to Browning's requests is legally and factually insufficient to support the jury's finding. The record reflects, however, that Robert Browning, Browning's project manager, testified to several instances where Browning submitted requests for information and received inaccurate or incomplete responses. One example was when Browning discovered that the original design failed to provide enough structural support for a certain wall to withstand wind loads. Browning submitted three separate requests for information on that issue, never got a complete response, and eventually had to come up with a new design on its own. This is more than a scintilla of evidence that ACCD failed to comply with the contract by providing inaccurate or incomplete information in response to Browning's requests for information. Furthermore, the evidence is not so weak as to be clearly wrong or manifestly unjust. Accordingly, we overrule this issue on appeal.

Because the evidence is legally and factually sufficient to support the jury's findings in Questions 1(a) and 1(b), we overrule this issue on appeal.

## REMAINING ISSUES

ACCD has brought up several other issues in its brief.[4] Because, however, it fails to present argument or authority for these issues, these issues are waived. TEX. R.APP. P. 38.1(h).[5] We decline, therefore, to address them on appeal.

## PROMPT PAY ACT

The Prompt Pay Act provides that a contractor that supplies goods or services to a political subdivision whose governing body meets only once a month or less is entitled to recover interest on payments that are forty-six days overdue. TEX. GOV'T CODE ANN. §§ 2251.021, 2251.025, 2251.026 (Vernon Supp.2003). A party who prevails on a Prompt Pay Act claim is entitled to reasonable attorney fees. *Id.* § 2251.043 (Vernon 2000).

At trial, the jury found that ACCD did not violate the Prompt Pay Act. Following the verdict, Browning filed a motion for JNOV, asking the trial court to disregard the jury's finding and render judgment for Browning. The trial court denied the motion.

In its cross-appeal, Browning argues that the trial court erred in denying its motion because the jury findings in Questions 1(d) and 14 are in conflict.

---

4. These issues are: 1) ACCD's argument that Jury Question 1 should have referred the jury to specific contract provisions at issue; 2) ACCD's argument that the jury charge improperly submitted a "total cost" theory of damages; 3) ACCD's argument that the jury charge improperly allowed the plaintiff to recover attorney fees Browning incurred when it negotiated a settlement with its subcontractors; 4) ACCD's argument that the evidence is legally and factually insufficient to support the jury's findings in Jury Questions 1(c) and 1(d); and 5) ACCD's argument that the evidence of overhead costs is legally and factually insufficient because Browning presented no evidence that it was unable to take on additional work during the delay.

5. Even if ACCD had presented argument and authority for these issues, however, we do not believe that any of these issues would have succeeded on appeal.

We review the denial of a motion for JNOV under a legal sufficiency standard, meaning we review the evidence in the light most favorable to the jury findings, considering only the evidence and inferences that support them and disregarding all evidence and inferences to the contrary. *Quaker Petroleum Chems. Co. v. Waldrop*, 75 S.W.3d 549, 553 (Tex.App.-San Antonio 2002, no pet.). If there is more than a scintilla of evidence to support the findings, the motion for JNOV was properly denied. *Id.* Only if there is no evidence to support the jury's findings must we examine the entire record to see if the contrary position is established as a matter of law. *Id.*

In its reply brief, ACCD argues that the trial court did not err in denying Browning's motion for JNOV because the jury findings in Questions 1(d) and 14 are not in conflict.

In reviewing jury findings for conflict, the threshold inquiry is whether the findings implicate the same material fact. *Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980). A court may not strike jury answers based on conflict if any reasonable basis exists upon which the conflict can be reconciled. *Luna v. S. Pac. Transp. Co.*, 724 S.W.2d 383, 384 (Tex. 1987). The reviewing court must reconcile apparent conflicts in the jury's findings, if reasonably possible, considering the pleadings and evidence, the manner of submission, and the other findings considered as a whole. *Bender*, 600 S.W.2d at 260. When the issues submitted have more than one reasonable construction, the reviewing court will generally adopt the construction that avoids a conflict in the answers. *Id.*

The test for determining whether an irreconcilable conflict between issues exists is whether one finding alone requires judgment in the plaintiff's favor and the other finding taken alone requires judgment in the defendant's favor. *Farmland Mut. Ins. Co. v. Alvarez*, 803 S.W.2d 841, 847 (Tex. App–Corpus Christi 1991, no writ); *Grice v. Hennessy*, 327 S.W.2d 629, 633 (Tex.Civ.App.-San Antonio 1959, no writ). Or, as one court phrased it: "To determine whether there is reversible error, the appellate court must only decide whether the conflict is such that one answer would establish a cause of action or defense, while the other would destroy it." *Sterling Trust Co. v. Adderley*, 119 S.W.3d 312, 320 (Tex.App.-Forth Worth 2003, pet. filed) (citing *Little Rock Furniture Mfg. Co. v. Dunn*, 148 Tex. 197, 222 S.W.2d 985, 991 (1949)).

Question 1(d) asks the jury: "Did ACCD fail to comply with the Contract [by] assessing liquidated damages against Browning without justification or cause?" The jury answered "yes" and awarded Browning $376,000 in damages. Question 14 asks the jury: "Did ACCD allow any payments owed to Browning under the Contract to become overdue?" The jury answered "no."

Browning argues that because the jury found in Question 1(d) that ACCD wrongfully withheld payments from Browning, and because it is undisputed that these payments were more than forty-six days overdue, the jury's finding in Question 14 that ACCD did not allow any payments owed to Browning to become overdue conflicts with its finding in Question 1(d).[6]

---

6. Browning argues that the jury found in Question 1(d) that ACCD wrongfully withheld payments. Although Question 1(d) seems to be about liquidated damages, not payments, Browning shows that when ACCD assessed

liquidated damages without cause, it did not require Browning to pay those damages to ACCD. Rather, ACCD offset the payments it owed Browning by those amounts. Thus, the liquidated damages ACCD assessed against

The jury's finding that ACCD wrongfully withheld payments, Browning argues, was a *specific* finding that should control the *general* finding that ACCD did not allow any payments owed to Browning to become overdue. Therefore, Browning argues, we should reverse and render judgment for Browning, awarding it interest on the wrongfully withheld payments and stipulated attorneys' fees of $733,684.74.

Neither Question 14 nor Question 1(d) taken alone, however, requires judgment in one party's favor while the other finding taken alone requires judgment in the other party's favor. *Farmland Mut.*, 803 S.W.2d at 847. Question 1(d) is a breach of contract question. Question 14 is a Prompt Pay Act question. The two questions go to different causes of action. Thus, the conflict is not such that one answer would establish a cause of action or defense while the other would destroy it. *Little Rock*, 222 S.W.2d at 991; *Sterling Trust Co.*, 119 S.W.3d at 320.

Because Browning fails to meet the test for conflicting jury findings, we overrule its cross-issue.

### Conclusion

We affirm the judgment of the trial court.

Browning were, in fact, payments ACCD owed to Browning.