**CONTINENTAL CASUALTY COMPANY,**
Petitioner,

v.

John G. STREET, Jr., Respondent.

No. A–9706.

Supreme Court of Texas.

March 11, 1964.

Rehearing Denied June 3, 1964.

Pepper, Markward & McGlinchey, Fort Worth, for petitioner.

Stone, Parker, Snakard, Friedman & Brown, Lawton G. Gambill, with above firm, John W. Herrick, Fort Worth, for respondent.

STEAKLEY, Justice.

Our former opinions, delivered December 11, 1963 are withdrawn. The following is the opinion of the Court.

The suit was by Respondent, John G. Street, Jr., against Continental Casualty Company, Defendant below and Petitioner here. It has had quite a history. See the opinions reported in Tex.Civ.App., 339 S. W.2d 680; Tex.Civ.App., 358 S.W.2d 746; and Tex., 364 S.W.2d 184. It reaches us on this occasion from a judgment of the Court of Civil Appeals, with one Justice filing a dissenting opinion, reversing the judgment of the trial court for Petitioner, and remanding the cause. Tex.Civ.App., 367 S.W.2d 894. We reverse the judgment of the Court of Civil Appeals, and affirm the judgment of the trial court.

The suit sought a recovery under the Surgical Expense portion of a Comprehensive Hospital, Nurse, Medical and Surgical Expense policy issued by Continental Casualty Company to Street. The basis of the suit was the performance upon Street by a legally qualified dental surgeon of a series of curettages whereby deposits on the teeth and portions of the periodontal tissue were removed. The treatment was for suppurative periodontitis.

The surgical expense section of the comprehensive policy is introduced by an opening paragraph which reads:

"When injury or sickness shall cause any member of the Family to undergo any operation named herein which is performed by a legally qualified physician or surgeon while this policy is in force as to such member, the Company will pay the actual expense incurred for such operation, including post operative care in the hospital, but not in excess of the amount set opposite the operation nor in excess of $500.00 for all operations performed as the result of any one accident or any one period of sickness."

There follows a specific listing of 198 operations, together with the maximum amount of the actual expense incurred for each operation which the company will pay. The maximum amounts range from $5.00 for a pinch skin graft to $500.00 for a total removal of the stomach, or for the radical removal of both breasts, or for the removal of an intervertebral disc with spinal fusion. Dental surgery is not listed.

This schedule is followed by a concluding paragraph:

"*The Company will pay*, subject to the limit provided, *for operations not named* above *amounts objectively determined on the basis of comparative severity with operations which are named*, but not less than the minimum nor more than the maximum amounts provided for operations named." (Emphasis added)

Upon the trial of the case, Street offered the testimony of the admittedly legally qualified dental surgeon who performed the series of curettages upon his teeth and gums. This witness sought to compare the dental surgery which he performed to a sinus operation, one of those listed in the surgical expense schedule of the policy. The Court of Civil Appeals found the testimony of this witness to be "that the maxillary sinus operation was the only one of the 198 in the policy schedule that had any comparability to the work he did on plaintiff." 367 S.W.2d at page 897. Street offered no other testimony upon the question of the comparative severity of that which was performed upon his teeth and gums with any other of the operations listed in the policy.

As pertinent here, the case was submitted to the jury upon special issues inquiring if the acts performed upon the mouth of Street constituted operations, to which the

jury answered in the affirmative; upon issues inquiring what amount of money would be comparable and reasonable for Continental Casualty to pay Street upon the basis of a comparison of the severity of the operations upon Street with those specifically listed in the insurance policy, which issues were not answered by the jury; and upon an issue inquiring if the operations performed upon Street were not of comparative severity with the sinus operation listed in the policy, to which the jury answered "They were not comparative."

Judgment for Continental Casualty Company was entered by the trial court upon the verdict of the jury. Street did not except to the action of the court in receiving, accepting and filing the verdict. He had not previously objected to the issues submitted, or requested any other issues. He made no motion for a mistrial, or for judgment non obstante veredicto, or to disregard the jury findings.

We construe the policy in question as constituting an agreement on the part of Continental Casualty Company to pay the actual expense incurred for any operation, subject to the specified limitations. The maximum amounts of actual expenses which would be paid were predetermined in the policy for those operations specified; for those not specified the amounts were to be determined on the basis of comparative severity with the operations listed. The burden was upon Street to establish that the acts performed upon him constituted operations; that they were performed by a legally qualified physician or surgeon; and, finally, the amount he was entitled to be paid under the policy provisions.

As to the first, the jury found that the acts performed upon Street constituted operations. Cf. Century Indemnity Co. v. Carroll, 126 Tex. 214, 86 S.W.2d 1083. As to the second, we affirm the correctness of the holding of the Court of Civil Appeals in Street v. Continental Casualty Co., Tex.Civ.App., 339 S.W.2d 680 (in which we dismissed the application for writ of error for want of jurisdiction). It is our opinion that a legally qualified doctor of dental surgery is a "legally qualified physician or surgeon" within the provisions of the insurance policy. The emphasis in the insurance contract is upon the legal qualification of the individual to perform the operation and not upon a particular field in the healing art. Article 4551a, Vernon's Annotated Civil Statutes, expressly recognizes that a dental surgeon operates. The policy did not expressly exclude dental surgery, or operations performed by a dental surgeon, from its coverage. To effect this exclusion would require the addition of the qualifying words "in the field of medicine" following the phase "legally qualified physician or surgeon." We made clear in Providence Washington Insurance Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379, that a limitation of liability will not be added where none exists in the policy itself. Cf. Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762; Western Reserve Life Insurance Co. v. Meadows, 152 Tex. 559, 261 S.W.2d 554; State v. Beck, 21 R.I. 288, 43 A. 366, 45 L.R.A. 269.

But Street failed in the third requirement. There was no basis in the jury verdict for a recovery in his behalf. The jury found against him on the issue of comparative severity with the sinus operation, which was the only operation listed in the policy upon which Street offered evidence. The jury was unable to agree upon answers to the general series of issues inquiring as to the amount of money which would be comparable and reasonable for Street to be paid upon the basis of a comparison of the severity of the operations performed upon him with those listed in the policy. Street did not object to the acceptance of the jury verdict as incomplete, and thus by timely objection afford the trial court the opportunity, before the jury was discharged, of correcting the error (if such it was) of accepting the verdict with the issues unanswered. Only Street could have benefitted from a reconsideration by

the jury of the verdict as it was brought in. He was required to preserve any error there may have been on the part of the trial court in accepting the jury verdict with the particular issues unanswered. Lewis v. Texas Employers' Insurance Ass'n, 151 Tex. 95, 246 S.W.2d 599. This he did not do. The trial court had no alternative under the jury verdict but to render judgment for Petitioner, and Respondent waived any benefit he might have claimed under the unanswered issues, and any right he may have had to have them answered.

Respondent's motion for rehearing is granted, and our judgment of December 11, 1963, is set aside. Judgment is now rendered reversing the judgment of the Court of Civil Appeals and affirming the judgment of the trial court.

## ON MOTIONS FOR REHEARING

It is not necessary to decide if Special Issue No. 21 was an ultimate and controlling issue in this case, as insisted by Respondent and supporting amici. The parties consented to its submission as such. Respondent Street offered evidence to establish that the operations performed on his gums were of comparative severity to the sinus operation which was among the 198 operations listed in the policy. Accordingly, Issue 21 inquired of the jury as follows:

"Do you find from a preponderance of the evidence that objectively determined, on the basis of comparative severity, the operations, if any you have so found, performed by Dr. Treadwell as a dentist upon the mouth of plaintiff were not of comparative severity with, 'Sinus Cutting into other than puncutre, mutiple', as listed in the policy in question?"

██ As stated in our previous opinion, Respondent Street did not object to the issue and without doubt would have insisted on judgment in his favor had the issue been answered favorably to him. But the point is that he tried his case, at least in part, upon the theory represented by Issue 21, and he was not entitled to a new trial upon the later claim that the issue was immaterial and not controlling. Cf. Allen v. American National Insurance Company, Tex., 380 S. W.2d 604.

The Motions for Rehearing of both Petitioner and Respondent are overruled.

SMITH, Justice (dissenting).

I respectfully dissent. I agree with two of the principle holdings of the Court, but do not agree with the judgment that Street take nothing by his suit.

First, I agree that Street did establish that the acts performed upon him constituted "operations." Second, I agree with the holding that a legally qualified doctor of dental surgery is a "legally qualified physician or surgeon" within the provisions of the insurance policy.

As the Court points out, the jury found in answer to Special Issue No. 21, that the operations performed by Dr. Treadwell were not of comparative severity with a sinus operation. It is true that the jury could not agree upon answers to Special Issues 4–8 which inquired as to the amount of money which would be comparable and reasonable for Street to be paid upon the basis of a comparison of the severity of the operations performed upon him with those listed in the policy. It is true that Street did not object to the acceptance of the jury verdict as incomplete. However, I do not agree that the foregoing proceedings in the trial court left the trial judge with "no alternative under the jury verdict but to render judgment for Petitioner (Continental Casualty) * * *."

The trial court rendered judgment for Continental Casualty upon the jury's answer to Special Issue No. 21 that the operations performed upon Street were not of comparative severity with a particular sinus operation listed in the insurance policy.

The Court of Civil Appeals sustained Street's contention that Special Issue No. 21 was not a controlling issue, and therefore the jury's answer thereto could not support a judgment for Continental Casualty. I fully agree that Special Issue No. 21 was not a controlling issue. The only basis for this court's action in *affirming* the trial court's judgment is apparently on either the theory that, inasmuch as the jury failed to answer Special Issues 4–8, Street did not carry the burden of proving the amount he was entitled to be paid under the policy provisions, or on the theory that Special Issue No. 21 and the answer thereto was controlling. The trial court's judgment cannot be affirmed on either theory, nor can it be affirmed on the grounds stated in the Court's opinion on rehearing.

The policy in question contains the following language:

"The Company will pay, subject to the limit provided, for operations not named above amounts objectively determined on the basis of comparative severity with operations which are named, *but not less than the minimum* nor more than the maximum amounts provided for operations named." (Emphasis added.)

The operations performed on Street were not named in the policy list. Furthermore, the jury failed to answer that these operations were of comparative severity with operations which are named. However, Street did obtain a jury finding that he had "operations" performed upon him within the meaning of the policy. Referring again to the policy's provisions, it states that an insured who has had an operation performed on himself is entitled to be paid " * * * not less than the minimum * * * amounts provided for operations named."

Inasmuch as the policy specifically provided that an insured *cannot* be paid *less* than the minimum amount for an operation, how could the trial court enter a judgment for Continental Casualty Company? Under my construction of the policy in question, Continental Casualty promised to pay Street a *minimum* amount ($5.00) for his operations even if he offered absolutely no testimony *comparing* the severity of his "unnamed" operations with any of those named.

Thus, even though the jury failed to answer Special Issues 4–8, and even though Street did not object to the acceptance of the jury verdict with the issues unanswered, there was still a basis in the jury verdict for a recovery in his behalf. Inasmuch as the jury found that the acts performed upon Street constituted operations, the specific terms of the policy entitled him to be paid " * * * not less than the minimum * * * amounts provided for operations named." Only by rewriting the terms of the insurance policy can this court hold that *"the trial court had no alternative under the jury verdict but to render judgment"* for Continental Casualty Company. (Emphasis added.)

I come now to discuss the phase of the case that is important. At page 650 of the original opinion, the Court states:

"The jury found against him on the issue (Special Issue 21) of comparative severity with the sinus operation * * *."

And at page 651 the Court states:

"The trial court had no alternative under the jury verdict but to render judgment for Petitioner, [Continental] and Respondent [Street] waived any benefit he might have claimed under the unanswered issues, and any right he may have had to have them answered."

Special Issue No. 21[1] and the answer thereto cannot afford a basis for a take-

1. *"SPECIAL ISSUE NO. 21*
"Do you find from a preponderance of the evidence that objectively determined,

on the basis of comparative severity, the operations, if any you have found, performed by Dr. Treadwell as a dentist

nothing judgment against Street. The Court did have an alternative. The Court could have entered a judgment, in spite of the finding, by basing its judgment on the express provision of the policy quoted above. Issue No. 21 cannot under any conceivable theory be controlling, chiefly because it does not inquire about any controlling fact. The policy says to determine "amounts" (which is what issues 4[2] through 8 sought to determine, but were unanswered); it does not say that the policy holder must prove that his operation was " * * * of substantially equal risk, involvement of time, expense and physical *affect* upon the human body [the definition of 'comparative severity' used in Issue 21] as one of the 'named' operations."

This court is erroneously holding that if a policy holder has an unnamed operation he must prove that it is " * * * of substantially equal risk, involvement of time, expense and physical *affect* upon the human body" as one of the "named" operations. This, in effect, is rewriting the policy and putting a burden on the insured which the policy does not put on him. The policy just says *compare* the unnamed operation with those listed. What is the ordinary meaning of "compare"? If one is asked to "compare" the grades of two students, it certainly does not mean that he can't compare them unless they are "substantially equal." If an artist were asked to compare two pictures painted by different artists of different scenes, on different sizes of canvas, he wouldn't say, "I can't do it because they are not 'susbtantially

equal.'" He would instead say, "Well, both artists used the same brush technique; blue is the predominant color in both, although one artist has used a lighter blue; while both are outdoor scenes, one artist has shown many clouds in the sky and the other has shown very few."

Universities offer courses in "Comparative Religions", but the religions studied and compared therein are not "substantially equal". And, by the same token, two operations in order to be compared on the basis of severity do not have to be " * * * of substantially equal risk, involvement of time, expense and physical *affect* upon the human body." (Issue 21). If there be two operations—regardless of their nature—they can be compared in severity, and in order to so compare them one does not have to first find that they are " * * * of substantially equal risk, involvement of time, expense and physical *affect* upon the human body" (Issue 21). For example, let us take two operations named in the policy— (1) "Appendix, removal of . . . . $150.-00" and (2) "Nail, removal of . . . . $10.00". These two operations can be compared in severity. The appellee Continental Casualty Company compared the two operations and obviously felt the removal of an appendix was about 15 times as severe as the removal of a nail for it allowed $150.00 for the appendectomy and $10.00 for the removal of the nail. A policy holder certainly should have the same right to compare without having to prove the unnamed operation is "substantially equal" to a named operation. The policy says to determine an

upon the mouth of plaintiff were not of comparative severity with, 'Sinus: Cutting into other than pun*cutre*, mu*tiple*', as listed in the policy in question?

"In connection with the preceding Special Issue No. 21, you are instructed that the term, 'comparative severity', means of substantially equal risk, involvement of time, expense and physical *affect* upon the human body.

"Answer: 'They were not comparative', *of*, 'They were comparative', as you may find.

"Answer: They were not comparative"

2. "SPECIAL ISSUE NO. 4:

"Comparing the severity of the operation, if any, which was performed on the plaintiff by Dr. Treadwell on the 22nd day of March, 1958, with the operations which are named in the insurance policy involved in this suit, what amount of money, if any, do you find from a preponderance of the evidence would be comparable and reasonable for the defendant to pay the plaintiff for such operation, if any? Answer in dollars and cents, if any.

"Answer: _____ "

*amount to be paid* by *comparing (not equating)* the severity of the unnamed operation with those named. Dr. Treadwell in his testimony compared the unnamed operations with a named one, and money damages issues (Nos. 4–8) were submitted based on the language of the policy. The jury failed to agree on the controlling issues, therefore, a new trial should have been granted by the trial court. It erred when it rendered judgment for Continental Casualty Company.

The policy says that any unnamed operation *can be* compared with those named, for the policy says *it will pay* for unnamed operations. So if an unnamed operation is had, it is supposed to pay something. The policy says you determine how much should be paid "on the basis of comparative severity with operations which are named, but not less than the minimum * * *" An insurance policy cannot set up an impossible test, so if the policy says the amount to be paid for an unnamed operation can be determined on the basis of comparative severity it is a recognition by Continental Casualty Company that the amount is what is to be determined and that it can be determined in every instance by comparison regardless of whether the operations are substantially equal.

The dictionary is recognized as giving the common meaning of words. In *The Winston Dictionary* "comparative" is defined as:

"*1,* pertaining to comparison, or to the act of comparing; *2,* not absolute; estimated by, or resulting from, comparison; relative; using, or founded on, comparison; as, *comparative* theology; *comparative* anatomy: "

"Compare" is defined as:

"*1,* to liken; refer to as similar; 2, to examine in order to discover likeness and unlikeness * * *"

*Webster's New Collegiate Dictionary* defines "compare" as:

"COMPARE 1. To represent as similar; to liken. 2. To examine the character or qualities of, for the purpose of discovering their resemblances or differences. 3. Gram. To modify according to the degrees of comparison; to state the positive, comparative, and superlative forms of. See COMPARISON, 2. —v.i. 1. To be like or equal; to admit, or be worthy of, comparison. 2. To vie; to assume a likeness or equality.

"One object is compared *with* another when set side by side with it in order to show their relative value or excellence; *to* another when it is formally represented as like it; as, Pope *compares* Homer *with* Vergil; he *compares* Homer *to* the Nile in boundless flow of riches. Syn. Compare, contrast, collate mean to set side by side in order to show likenesses and differences. Compare implies as its aim the showing of relative values or excellences by bringing out characteristic qualities, whether similar or divergent; contrast implies as its aim an emphasis upon the differences; collate implies minute and critical examination in order to note points of agreement or divergence. —n. Comparison; as, beyond *compare*."

Applying Webster's definition to the policy language that unnamed operations are to be paid for in an amount determined " * * * on the basis of comparative severity *with* operations which are named, * * *" (emphasis supplied), it shows that Issue 21 was not controlling, because Webster says that "One object is compared *with* another when set side by side with it in order to show their relative value or excellence; *to* another when it is formally represented as like it; * * *" The policy says to determine the amounts to be paid for unnamed operations by comparing the severity of the unnamed operation "*with*" operations which are named; therefore, under Webster's definition this means that you set an unnamed operation by the

side of a named operation in order to show their "relative value" not to show that they are "substantially equal."

These definitions and the policy language show that Special Issue 21 is not a controlling issue. The jury's answer that the two operations "were not comparative" could just as well mean that the jury felt the operations performed by Dr. Treadwell were more severe than the named operation, for under the trial court's definition in order to answer "they were comparative" the jury would have had to find they were substantially equal.

The trial court based its judgment solely on the answer to Issue No. 21. Street, as appellant, urged in the Court of Civil Appeals that Special Issue 21 was not a controlling issue and that the trial court erred in rendering judgment for Continental. The Court of Civil Appeals sustained this point and remanded the cause to the trial court for a new trial. Continental's petition for writ of error contains a point that the Court of Civil Appeals was in error in so holding. It is true that Street did not in the trial court and the Court of Civil Appeals pray for judgment for the minimum provided in the policy. However, Street did, in his motion for new trial, contend that the answer to Special Issue No. 21 of the Court's charge " * * * does not constitute a finding by the jury that plaintiff is not entitled to recover any sum of money from the defendant under said insurance policy for operations performed upon plaintiff by Dr. Treadwell." Certainly, the trial court did not base its judgment against Street upon the failure of the jury to answer Special Issues 4 to 8, inclusive. This being a jury trial, neither findings of fact nor conclusions of law were filed. It is logical to conclude that the trial court would have granted Street a new trial, but for its belief that the jury answer to Special Issue No. 21 warranted a take-nothing judgment against Street.

As a matter of law, whether Street prayed for it or not, the Court could have,

under the evidence and the jury's answer to Issue No. 1, entered a judgment for $5.00 in favor of Street. The answer to Issue 1 was a jury finding that an operation had been performed. The policy said to pay Street at least $5.00 for an operation. The jury verdict forms a basis for a judgment for Street for $5.00, and does not form any basis for a take-nothing judgment or judgment for the defendant, Continental. A valid judgment for Continental cannot be based upon the answer to immaterial Issue 21.

The judgment of the Court of Civil Appeals reversing and remanding this cause to the trial court must be sustained, unless we sustain Street's alternative prayer for a judgment for $5.00, and the statutory penalty, plus all costs.

It is my opinion that this court could grant Street's request for judgment, even though Street's prayer for judgment was filed in this court for the first time. However, if the Court is of the opinion that judgment cannot be rendered in favor of Street, then the cause should be remanded to the trial court with appropriate instructions.

I agree with Street that the case of Lewis v. Texas Employers' Insurance Ass'n, 151 Tex. 95, 246 S.W.2d 599, has no application. The holding in the Lewis case was predicated on the fact that the jury had found facts which supported all the elements necessary for a judgment, "*but* the jury in the case at bar had not found any facts which would 'support all the elements necessary for a judgment' for the defendant insurance company."

Street proved he had "unnamed" operations. Continental Casualty Company promised in its policy to pay him for these operations. Continental Casualty Company promised to pay him a minimum amount even if he offered no testimony comparing the severity of his "unnamed" operations with any of those named. He offered evidence comparing operations, and damage issues were submitted. Yet, Street is, as of

now, empty handed. The trial court erred in rendering a take-nothing judgment in favor of Continental Casualty Company.

The Court has written on motion for re-hearing that since Street did not object to Issue 21, he "without doubt would have insisted on judgment in his favor had the issue been answered favorably to him." The record does not support such a conclusion, but, on the other hand, Street has contended in all courts that Special Issue 21 was not a controlling issue. The effect of his position is that an affirmative answer to the issue woud not support a judgment for either party.

The judgment of the Court of Civil Appeals should be affirmed; or, in the alternative, judgment should be rendered for Street for the minimum amount of money provided in the policy, plus penalties, costs, etc.