

★ ★ ★               ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00093-CV

**SMOOTH SOLUTIONS LIMITED PARTNERSHIP**,
Appellant

v.

**LIGHT AGE, INC.**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CI-13168
Honorable Janet Littlejohn, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:       Catherine Stone, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   June 24, 2009

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

Smooth Solutions Limited Partnership filed suit against Light Age, Inc., alleging causes of action for breach of contract, fraud, breach of warranty, and violations of the Texas Deceptive Trade Practices Act. Light Age counterclaimed for breach of contract and fraud. The trial court, based on the jury's verdict, rendered a take nothing judgment on each party's claims. Smooth Solutions appeals, arguing the trial court erred in refusing to submit its breach of contract question to the jury.

We reverse that portion of the judgment by which Smooth Solutions takes nothing on its breach of contract claim, and remand the case for further proceedings on that claim. The remainder of the trial court's judgment is affirmed.

## BACKGROUND[1]

Smooth Solutions is a laser hair removal company. In 2001, its founder, Dr. Steven Finder, contacted Light Age, which manufactures and sells laser hair removal machines, to inquire about equipment. Light Age stated it could provide Smooth Solutions with more reliable, less expensive equipment for laser hair removal. Light Age provided Smooth Solutions with quotes for machinery, attachments, and a two-year service contract. Smooth Solutions agreed to the second quotation provided by Light Age, which provided for the purchase of two machines, with the understanding that it would only be purchasing one machine.[2]

Light Age installed the machine, which Smooth Solutions paid for "in full." The day after installation, Smooth Solutions began experiencing problems. On the first day of use, the power supply to the machine exploded and smoke poured out, forcing Smooth Solutions to evacuate its clinic. Smooth Solutions returned the machine and Light Age repaired it, but it was dropped during shipping – a fact Light Age did not disclose to Smooth Solutions. Smooth Solutions continued to

---

[1] Pursuant to rule 38.1(f) of the Texas Rules of Appellate Procedure, Smooth Solutions includes in its brief a statement of facts supported by record references. *See* Tex. R. App. P. 38.1(f)  This statement of facts is uncontradicted. Light Age did not include a statement of facts in its brief. *See* Tex. R. App. P. 38.2(a)(1)(B) (stating appellee's brief need not include statement of facts unless appellee is dissatisfied with that portion of appellant's brief). Accordingly, we will accept Smooth Solutions's statement of facts as true. *See id.* R. 38.1(f) (stating that in civil case appellate court will accept as true facts stated in appellant's brief unless another party contradicts them); *see also Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 124 (Tex. 2006); *Lamb County Elec. Co-op., Inc. v. Pub. Util. Comm'n*, 269 S.W.3d 260, 265 n.1 (Tex. App.–Austin 2008, pet. denied). We note that we have reviewed the record and Smooth Solutions presented evidence to support the statements contained within its statement of facts.

[2] Light Age explained to Dr. Finder that in order to provide Smooth Solutions with the proposed discount, it had to show two machines on the contract even though Smooth Solutions was only obligated to purchase one machine.

have problems with the machine and reported this to Light Age. After months of problems and insufficient response by Light Age, Dr. Finder called Light Age to sever the business relationship. Light Age agreed the machine was not performing properly and made several promises in an attempt to preserve the relationship with Smooth Solutions. The promises included providing Smooth Solutions with a "backup" machine, to be used when the original machine was inoperable, and an agreement "to extend [Smooth Solutions's] warranty two years at no additional cost."

Light Age sent a second machine, but it was not identical to the first and lacked some features necessary for the treatment of Smooth Solutions's clients. However, by using both machines, Smooth Solutions was able to keep most scheduled appointments until the day both machines temporarily stopped functioning. Each machine required a password to operate. The passwords changed periodically and Light Age failed to provide Smooth Solutions with the updated passwords. This occurred on a Saturday and no one from Light Age was available to provide the necessary passwords. When Dr. Finder was notified, he testified he immediately contacted the Light Age CEO and demanded the passwords be removed. According to Dr. Finder, the CEO agreed, but the passwords were never removed.

Around this same time, Light Age was failing to respond timely to repair requests, instructing Smooth Solutions to use the backup machine instead of sending a repair technician. Dr. Finder called Light Age to end the relationship and negotiate the return of both machines. Light Age apologized and asked for another chance. Dr. Finder agreed and Light Age began responding to repair requests in a more timely manner. But according to Dr. Finder, the reliability of Light Age's machines was not as good as machines provided by other vendors.

When the original two-year warranty was about to expire Dr. Finder suggested a three-month trial period during which Light Age would service the machines and keep track of costs, even though Light Age had agreed to provide an additional two-year warranty at no cost. In exchange, Smooth Solutions would pay Light Age $3,900. At the end of the trial period, Light Age claimed it had spent $5,000 servicing the machines. At this time, Light Age demanded that Smooth Solutions pay $36,000 for an additional one-year warranty on the machine. Smooth Solutions refused, so Light Age refused to service the machines or provide the necessary passwords to operate the machines. Once the passwords expired, the machines ceased to operate. Smooth Solutions requested the service manual for the machines, but Light Age refused unless Smooth Solutions paid $25,000 – the amount Light Age claimed was owed for the second machine in the second quotation. Light Age ultimately demanded payment of $96,750 and threatened legal action. Smooth Solutions refused to pay and filed suit; Light Age counterclaimed.

Following a nine-day jury trial, the jury answered "no" to all liability questions. The trial court entered a take-nothing judgment based on the verdict. Smooth Solutions appealed. In a single issue, Smooth Solutions claims the trial court erred in refusing to submit its breach of contract question to the jury and that the refusal was harmful. Light Age argues there was no error because the breach of contract claims pled by Smooth Solutions were subsumed within the breach of warranty question submitted to the jury.

## STANDARD OF REVIEW

Generally, the standard of review for jury charge error is whether the trial court abused its discretion. *Sanchez v. Mica Corp.*, 107 S.W.3d 13, 31 (Tex. App.—San Antonio 2002, judgment vacated in part pursuant to Rule 56.3) (citing *Texas Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647,

649 (Tex. 1990)). However, "[w]hether a charge submits the controlling issues in a case, in terms of theories of recovery or defense, is a question of law that we review de novo." *Sanchez*, 107 S.W.3d at 31; *see Alamo Community College Dist. v. Browning Constr. Co.*, 131 S.W.3d 146, 160 (Tex. App—San Antonio 2004, pets. denied ) (citing *Cont'l Cas. Co. v. Street*, 379 S.W.2d 648, 651 (Tex. 1964)). In any case, we may not reverse based on charge error unless the error is harmful. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749-50 (Tex. 1980). Error is harmful with relation to the jury charge only if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. TEX. R. APP. P. 44.1(a).

## DISCUSSION

The goal of the jury charge is to submit the controlling issues to the jury in a logical, simple, clear, fair, correct, and complete manner. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). A "controlling issue" is one that requires a factual determination to render judgment in the case. *Paul Mueller Co. v. Alcon Labs., Inc.*, 993 S.W.2d 851, 854 (Tex. App—Fort Worth 1999, no pet.); *Pitman v. Lightfoot*, 937 S.W.2d 496, 518 (Tex. App.—San Antonio 1996, writ denied). The trial court must submit to the jury the controlling questions, instructions, and definitions raised by the pleadings and supported by the evidence. *Triplex v. Riley*, 900 S.W.2d 716, 718 (Tex. 1995); *Pitman*, 937 S.W.2d at 518. *see also* TEX. R. CIV. P. 278 (stating trial court shall submit questions, instructions, and definitions raised by written pleadings and evidence). However, the trial court is afforded broad discretion to fashion the jury charge, provided it is legally correct. *Hyundai Motor*, 995 S.W.2d at 664. And, a party's entitlement to a question on a controlling issue does not necessarily equate to entitlement to a question for each specific cause of action pled. *See*

*id.* at 664-666; *see also Shupe v. Lingafelter*, 192 S.W.3d 577, 579-80 (Tex. 2006) (holding trial court's refusal to submit instruction on negligent entrustment was harmless where jury failed to find negligence in response to jury question on negligence generally, i.e., jury provided answer to negligent entrustment by answering negligence question).

As to breach of contract, Smooth Solutions pleaded and presented evidence that Light Age:

(1) failed to provide a reliable machine that could be used to treat Smooth Solutions's clients;

(2) failed to provide a machine with the requested specifications;

(3) failed to provide a machine that functioned as promised;

(4) promised an additional two-year warranty on the machine after Smooth Solutions began to experience problems, but failed to honor that promise; and

(5) agreed to remove the password on the machine after Smooth Solutions complained about its existence, but failed to do so.

The trial court's breach of warranty question provided in pertinent part:

Was the failure, if any, of Light Age, Inc. to comply with a warranty a producing cause of damages to Smooth Solutions Limited Partnership?

\* \* \*

"Failure to comply with a warranty" means any of the following:

a. Failing to comply with an express warranty.

An "express warranty" is an affirmation of fact or promise made by Light Age Inc. that relates to the laser machine or the service contract **and becomes part of the basis of the bargain**. It is not necessary that formal words such as "warranty" or "guarantee" be used or that there be a specific intent to make a warranty; or

b. Furnishing or selecting goods that were not suitable for a particular purpose if Light Age Inc. had reason to know the purpose and also had reason to know that Smooth Solutions Limited Partnership was relying on Light Age Inc.'s skill or judgment to furnish or select suitable goods[.]

\* \* \*

(emphasis added)

Breach of contract and breach of warranty "are distinct causes of action." *Med. City Dallas, Ltd. v. Carlisle Corp*., 251 S.W.3d 55, 60 (Tex. 2008) (citing *Sw. Bell Tel. Co. v. FDP Corp*., 811 S.W.2d 572, 576 (Tex. 1991)). However, this does not mean one claim could never be subsumed with in the other in the context of a jury charge; it depends upon the pleadings, evidence, and the charge in the particular case. *Cf. Hyundai Motor*, 995 S.W.2d at 664 (holding that in design defect case jury question on strict liability subsumed requested question on breach of implied warranty under plaintiff's pleadings and evidence); *VingCard A.S. v. Merrimac Hospitality Sys., Inc*. 59 S.W.3d 847, 866 (Tex. App.—Fort Worth 2001, pet. denied) (holding that breach of contract question subsumed affirmative defense of excuse and counterclaim for breach of contract where pleadings and evidence established question, defense, and counterclaim involved same controlling issue). Based on Smooth Solutions's live pleading and the evidence presented at trial, the controlling issues underpinning the breach of contract claim were whether (1) Light Age complied with the statements and promises it made regarding the machine prior to the purchase by Smooth Solutions, (2) the machine provided was suitable for the purposes for which it was intended, and (3) Light Age complied with promises regarding the machine and the additional two-year warranty after the purchase in order to maintain its business relationship with Smooth Solutions.

After analyzing the jury charge in light of Smooth Solutions's pleadings and its evidence, we hold the breach of warranty question targeted some of the specific conduct claimed by Smooth Solutions to constitute a breach of contract; other conduct was not covered by or subsumed within the breach of warranty question. In determining whether Light Age failed to comply with any

express warranty or furnished a product that was not suitable for Smooth Solutions's purposes the jury was clearly asked to decide whether Light Age failed to provide a reliable machine with the requested specifications that functioned as promised. These breach of contract allegations were mere shades of the breach of warranty questions actually submitted to the jury. However, Smooth Solutions's remaining allegations – those related to Light Age's failure to honor the additional two-year warranty and remove the passwords – were not and could not have been encompassed within, or considered by the jury, based on the breach of warranty submission. Clearly, Light Age's alleged failures relating to the additional warranty and the password removal were irrelevant to the laser machines "suitability for a particular purpose." Nor can we hold these allegations were covered by the "express warranty" as that term was defined in the charge. The definition of express warranty required the affirmation or promise at issue (the promise to extend the warranty and remove the passwords) to be one that formed "the basis of the bargain." Light Age's alleged promises, and subsequent failures, to provide an additional two-year warranty and remove the passwords from the machines were made *after* the initial agreement between the parties. These subsequent promises were made, according to Smooth Solutions's evidence, in an attempt to keep Smooth Solutions's business and secure future business at a time when Smooth Solutions was ready to sever the existing relationship. These promises did not, therefore, form the basis of the original agreement between Light Age and Smooth Solutions. Accordingly, because these two specific allegations, which formed part of the basis of Smooth Solutions's breach of contract claim, were not subsumed with the breach of warranty question, and Smooth Solutions properly pled the allegations and produced evidence supporting them, we hold the trial court erred in refusing Smooth Solutions's requested breach of contract jury question.

We further hold the trial court's error in refusing the breach of contract submission was harmful. Smooth Solutions was deprived of the opportunity to submit a controlling issue, which was plead and supported with evidence, to the jury. This deprivation precluded Smooth Solutions from complaining on appeal about its failure to recover on this claim, denying it the opportunity of properly presenting the case on appeal. *See* TEX. R. APP. P. 44.1(a).

## CONCLUSION

We hold the trial court erred in refusing to submit Smooth Solutions's breach of contract question and that such error was harmful. Accordingly, we sustain Smooth Solutions's issue, reverse that part of the trial court's judgment by which Smooth Solutions takes nothing on its breach of contract claim, remand the case back to the trial court for further proceedings on that claim consistent with this opinion, and affirm the remainder of the judgment.

Steven C. Hilbig, Justice