

NUMBER 13-10-00021-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**TOTAL E&P USA, INC., AND POOL WELL
SERVICES CO. A/K/A NABORS WELL SERVICES,**     Appellants,

**v.**

**MO-VAC SERVICE COMPANY, INC.,**     Appellee.

---

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

**I.     BACKGROUND**

**A.     Evidence Adduced at Trial**

Total E&P USA, Incorporated (Total) is an oil and gas company that operates in

South Texas, among other locations throughout the United States. Prior to 2003, Total hired various companies, including Mo-Vac Service Company, Incorporated (Mo-Vac), to perform oil field services on a per-job basis. The record shows that Mo-Vac had provided a variety of services to Total for nearly forty years. In 2003, however, Total implemented a "Supplier Selection Process." The purpose of this process was to negotiate a written oil field services contract, called a Blanket Services & Supply Agreement (BSSA), with a single vendor to reduce Total's supplier base and improve invoice processing and company ownership. The selected vendor would provide a bundle of at least thirty-eight fluid logistics services for Total, including the delivery, storage, and disposal of drilling and completion fluids, liquid waste, and solid waste. The contract term would be for a minimum two-year period, with an optional three-year renewal.

Total issued a call for Requests for Proposals (RFP) to several vendors for the BSSA. The RFP stipulated that Total reserved the right to accept or reject any or all of the RFP responses at its complete discretion and without explanation. Total would formally draft the BSSA after a vendor was selected from the RFP process. The RFP provided that "in the event of an agreement, the pricing structure, terms [and] conditions contained in the final agreement [would] supercede all existing contracts, pricing agreements, Master Service Agreement[s,] and other arrangements" between the selected vendor and Total. Total used a four-part scoring matrix to evaluate vendor data. The four criteria included: safety, total cost, service and quality, and value. The RFP also included a confidentiality agreement, whereby vendors and Total agreed to keep confidential, trade secret, and/or proprietary information secret for the purposes

2

of the bidding process.

Total employee Tim Weaver was responsible for the RFP process. Mo-Vac and appellant Pool Well Services a/k/a Nabors Well Services (Pool) were among the vendors selected to submit RFP proposals. When Mo-Vac submitted its first bid to the RFP on March 10, 2004, Weaver called Mike Flanagan, Mo-Vac's office manager and the employee responsible for Mo-Vac's RFP response, to let him know that Mo-Vac's first bid was not competitive with Pool's bid. Weaver testified that he believed that this was Flanagan's first experience with RFPs, therefore, Weaver wanted to give Mo-Vac the opportunity to submit a second bid. The two men spoke on the phone several times, and Flanagan admitted that he asked Weaver for advice on how to make Mo-Vac's RFP more competitive. The record shows that Weaver disclosed at least six of Pool's final bid prices to Flanagan so that Mo-Vac could submit a third, more competitive RFP bid. During trial, Flanagan testified that Weaver stated Mo-Vac would receive the BSSA if it lowered its total bid price to an amount close to or below $4.2 million. However, Flanagan also testified that he knew no written contract existed between Mo-Vac and Total at that time.

Weaver also called Pool about its RFP response. In a March 12, 2004 e-mail, Weaver asked why Pool's cost for transporting solids was significantly higher than its cost for transporting liquids. Pool discovered it included the use of "supersucker" vacuum equipment in its quote regarding solid transport. When the vacuum equipment was removed, that line item price decreased. Mo-Vac, in its lawsuit, argued that Total gave other preferential treatment to Pool besides this e-mail inquiry to help its chances in the BSSA process. For example, they asserted that Total: communicated with Pool's

3

Contract Administrator Roy Cole throughout the RFP process; failed to use Pool's predecessor company's health and safety records in the evaluation matrix; commissioned an environmental audit report for Pool and not for other vendors; and requested an inspection of Pool's facility only.

Total ultimately awarded the BSSA to Pool. In response, Mo-Vac filed suit against Total and Pool. Most of the claims Mo-Vac asserted against Total revolved around breach of contract, fraud, and breach of the RFP confidentiality agreement. Mo-Vac argued at trial that Total used Mo-Vac to its advantage to encourage Pool to lower its prices in the RFP process. Mo-Vac's claims against Pool included business disparagement, conspiracy, and tortuous interference with a prospective business relationship.[1]

The jury found for Mo-Vac on all of its claims and awarded damages. Total and Pool subsequently filed this appeal.

## B.    Issues on Appeal

On appeal, Total asserts ten issues:   (1) Total is a private company and has the right to contract with whomever it chooses; (2) there was no meeting of the minds to create a contract; (3) the alleged oral agreement between Total and Mo-Vac was barred by the statute of frauds; (4) Mo-Vac failed to introduce evidence of Total's alleged breach of a confidentiality agreement; (5) there is no evidence that the alleged breach of the confidentiality agreement caused any damages; (6) Mo-Vac failed to introduce evidence

---

[1]   Other parties were involved in this case, as well. This case actually began when Ron Miller, a Mo-Vac employee, stated that Arnold Davila, Pool's South Texas District Manager, made defamatory statements that Miller was "taking kickbacks that were being given by Mo-Vac Services." Miller filed a defamation claim, which is not at issue in this appeal.

of Total's intent to commit an alleged fraud; (7) the trial court's judgment violates the one-satisfaction rule; (8) the trial court's judgment violates the law of contorts; (9) the trial court erred in awarding attorney's fees to Mo-Vac; and (10) the trial court erred in awarding pre-judgment interest to Mo-Vac.

Mo-Vac set forth one cross-issue:  that the trial court erred in the admission of certain financial information of its company and its owner into evidence.

Pool asserts five issues:   (1) the trial court committed error when it submitted the jury charge regarding Pool's "fraudulent transaction"; (2) the trial court committed error when it asked the jury to apportion responsibility for Mo-Vac's damages when there was no evidence that Pool proximately caused these damages; (3) the evidence is legally and factually insufficient to support the finding that Pool participated in fraud; (4) the jury's findings in Question 3 (that Pool participated in a fraud) conflict with its finding in Question 8 (that Pool did not conspire to commit a fraud) and therefore cannot stand; and (5) there is no basis to support an award of attorney's fees from Pool.

We affirm, in part; reverse and render, in part; and reverse and remand, in part.

## II.    TOTAL'S ISSUES

### A.    Breach of Oral Contract

Total, in its third issue,[2] disagrees that an oral contract existed to award Mo-Vac the BSSA.   To support this contention, Total cites *Baylor University v. Sonnichsen*, a 2007 Texas Supreme Court case.   *See* 221 S.W.3d 632, 633 (Tex. 2007).   In *Baylor*,

---

[2] For purposes of clarity, we will address these issues out of order.

5

Tom Sonnichsen was hired to be the university's women's volleyball coach in 1989. *Id.* At a meeting in May of 1995, Baylor administrators informed their coaching staff that they planned to offer written two-year contracts to all of their head coaches, and written one-year contracts to their assistant coaches. *Id.* at 634. On December 29, 2005, Baylor advised Sonnichsen that he would not be awarded a contract for the 1996-97 school year. *Id.* Subsequently, Sonnichsen sued for breach of contract and fraud. The Texas Supreme Court held in *Baylor* that "a breach of contract claim based on an oral promise to enter a contract that is not performable in one year and is not in writing is barred by the statute of frauds." *Id.* at 635.

We agree that *Baylor* applies in this case. Here, assuming for the sake of argument Mo-Vac's statement of the facts, Total allegedly made an oral promise to Mo-Vac to award Mo-Vac a two-year BSSA contract with a single three-year extension if Mo-Vac submitted a bid lower than $4.2 million. The statute of frauds, however, provides that a promise or agreement that cannot be performed within one year from the date of the agreement "is not enforceable unless the promise or agreement, or a memorandum of it, is . . . in writing . . . and signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." *See* TEX. BUS. & COMM. CODE ANN. § 24.01 (West 2009). Here, the two-year contract, which had not yet been reduced to writing, could not be performed in one year. Therefore, the oral contract could not be enforced per the statute of frauds. *Id.*

In response, Mo-Vac argues that the BSSA states that the contract could be terminated at any time at Total's request, thus making it feasible for the contract to be performed within a year. We find this argument unpersuasive, as the RFP clearly

established a set time period of two years by which Total sought services, with a possible three-year extension. There is a difference between performance of a contract and termination of a contract within the context of the statute of frauds:

> Performance of an agreement must be possible within one year or the contract will fall within the provisions of the statute of frauds. Here, the contract provided that the agreement was for a period of two years unless terminated earlier by [employee's] death or permanent disability or upon other occurrence of certain performance failures attributable to [employee] as set forth in the agreement. While the original contract called for termination by death, disability, or performance failures, those events are methods of termination. Those events do not constitute performance of the contract; they constitute excusable non performance of the contract. We hold that the original contract falls under the statute of frauds.

*Farone v. Bag'n Baggage, Ltd*., 165 S.W.3d 795, 800 (Tex. App.—Eastland 2005, no pet.). Just like in *Farone*, the ability to terminate a contract within a year does not necessarily imply that it can be "performed" within a year. *Id.* Because the contract at issue provides for services over a definite period of time longer than one year, we hold that it falls within the statute of frauds. *See id.*; *Walker v. Tafralian*, 107 S.W.3d 665, 669 (Tex. App.—Fort Worth 2003, pet. denied) ("An agreement that fixes a definite period longer than a year during which performance shall continue indicates that the parties did not contemplate earlier performance.").

Mo-Vac also argues that the actual "oral contract" was the promise to award the two-year BSSA contract, not the actual contract itself. The actual awarding of the contract, Mo-Vac asserts, could occur within a year and thus would remove this issue from the statute of frauds. We also find this argument unpersuasive. *Baylor* clearly holds that "a breach of contract claim based on an oral promise to *enter* a contract that is not performable in one year and is not in writing is barred by the statute of frauds." 221

7

S.W.3d at 635 (emphasis added). No oral contract could have been upheld under the statute of frauds law, thus, there was no breach of contract.

We sustain issue three. Having determined that no contract exists, we need not address Total's first issue concerning its ability to contract with whomever it wants to, or Total's second issue regarding whether there was a meeting of the minds on the contract. *See* TEX. R. APP. P. 47.1.

## B. Fraud

In issue six, Total contends that Mo-Vac failed to introduce evidence of Total's intent to commit an alleged fraud. Here again, we find that *Baylor* applies to this issue. In *Baylor*, Sonnichsen alleged in the alternative that Baylor "committed fraud by representing that it would issue a two-year written contract to him." 221 S.W.3d at 634. However, the Texas Supreme Court concluded that, "the statute of frauds bars a fraud claim for benefit-of-the-bargain damages when the claim arises from a contract that has been held to be unenforceable." *Id.* at 636; *see Haase v. Glazner*, 62 S.W.3d 795, 796 (Tex. 2001) (holding that the statute of frauds would be rendered ineffectual if a plaintiff could recover "benefit-of-the-bargain" damages under a fraud claim that could not be enforced as a contract).

Texas case law recognizes two forms of direct damages in fraud claims: out-of-pocket and benefit-of-the-bargain damages. *See Baylor*, 221 S.W.3d at 636 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs.*, 960 S.W.2d 41, 49–50 (Tex. 1998)). "The viability of [plaintiff's] fraud claim depends upon the nature of the damages he seeks to recover." *Id.* In the underlying case, the jury was asked "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate

8

Movac Services Company, Inc. for its damages, if any that were proximately caused by such fraud of Total E & P USA, Inc." The jury awarded damages for "lost profits sustained in the past." Because "lost profits" essentially constituted "benefit-of-the-bargain" damages that Mo-Vac sought to recover under the unenforceable oral contract, its fraud claim must fail. *Id.* at 637 (citing *Nagle v. Nagle*, 633 S.W.2d 796, 801 (Tex. 1982)). We sustain Total's sixth issue.

## C.    Breach of Confidentiality Agreement

Total's fourth issue asserts that Mo-Vac failed to introduce evidence of Total's alleged breach of a confidentiality agreement, and its fifth issue argues that there is no evidence that the alleged breach of the confidentiality agreement caused any damage. The alleged confidentiality agreement was part of the RFP application, and all vendors who participated in the process signed it as part of the RFP procedure. Relevant portions of the agreement follow:

> WHEREAS, Total has disclosed or may hereafter disclose to Vendor, technical or commercial information which TOTAL regards to be of confidential, trade secret, and/or proprietary nature ("Information") for certain business, or other purposes; and

> WHEREAS, TOTAL desires that such Information remain of a confidential, trade secret, and/or proprietary nature and would not make such disclosures without Vendor's agreement to maintain confidential treatment of such Information.

> NOW, THEREFORE, for good and valuable consideration, Vendor and TOTAL agree as follows:

> 1. Vendor acknowledges that the Information is confidential and that the Information is the valuable property of TOTAL. Vendor agrees to keep secret and agrees not to use, except in the completion of this Request for Proposal (RFP) for TOTAL, any Information or disclose to any third party any Information of which Vendor may become aware.

9

Information may be used, and disseminated within its organization by Vendor only to the extent reasonably required to complete this RFP. Any additional parties contacted by Vendor pursuant to the completion of the RFP, must adhere to the same requirements regarding disclosure of information contained in the RFP as stated in this confidentiality agreement. Further, Vendor agrees to be accountable for any breach of confidentiality committed by a party to whom Vendor discloses any information.

2. TOTAL acknowledges that all Information provided in Vendor's response to the RFP, including but not limited to financial information, is confidential and the valuable property of Vendor. TOTAL agrees to adhere to the same requirements identified in Paragraph 1 and the subsequent sections of this Agreement.

. . .

4. The obligation evidenced by this Agreement shall run to and be directly enforceable by TOTAL and Vendor and all legal and/or equitable remedies which may now or hereafter become available for the enforcement of similar obligation, whether or not such remedies are specifically referred to herein, shall be available to TOTAL and Vendor. The prevailing party shall be entitled to recover all costs incurred and reasonable attorney fees in an action to enforce the obligations evidenced nearby.

. . . .

6. TOTAL provides the Information on an "as is" basis. TOTAL will not be liable for any damages arising out of use of the Information. The use of the Information is at Vendor's own risk.

. . . .

We interpret Total's fourth and fifth issues as a challenge to the legal and factual sufficiency of the evidence. In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact finder could and disregard evidence contrary to the finding unless a

reasonable fact finder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). In reviewing factual sufficiency, we consider all the evidence in a neutral light and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Here, Mo-Vac presented the testimony of Total employee Weaver to support its claims for breach of the confidentiality agreement. During trial, Total employee Weaver testified that he reviewed a document from Mo-Vac employee Flanagan, which reflected some prices Pool had submitted. Weaver testified that he must have given Flanagan those numbers, because they could not have come from anyone else in Total's organization. Weaver explained that he probably released these numbers in an attempt to explain the RFP process to Flanagan, who seemed confused by the process in general.

The jury is the sole judge of credibility. *See City of Keller*, 168 S.W.3d at 820. "[W]henever reasonable jurors could decide what testimony to discard, a reviewing court must assume they did so in favor of their verdict, and disregard it in the course of legal sufficiency review." *Id.* Further, "courts reviewing all the evidence in a light favorable to the verdict must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review." *Id.* at 822. In this case, the jury heard testimony that Weaver revealed Pool's RFP pricing models. Although this would tend to support a breach of confidentiality claim by Pool, instead of Mo-Vac, the jury was entitled to make reasonable inferences regarding Weaver's character and behavior during the RFP process. The jury also

11

considered evidence such as the fact that Mo-Vac projected a $4.2 million profit if it was awarded the BSSA and that Mo-Vac lost a forty-year business partner when it was not awarded the BSSA. In light of these facts, and indulging every reasonable inference that would support the verdict, we hold that the jury could have reasonably found that Total breached the confidentiality agreement and that Mo-Vac suffered damages. *See id.*, 168 S.W.3d at 822. We also hold, viewing the evidence in a neutral light, that such a finding would not be so contrary to the weight of the evidence as to be clearly wrong or unjust. *See Cain*, 709 S.W.2d at 176. We overrule Total's fourth and fifth issues.

## D. Law of Contorts

By its eighth issue, Total asserts that the trial verdict violates Texas's law of contorts. More specifically, Total argues that Mo-Vac's two fraud claims are barred as a matter of law under this legal doctrine. To begin our analysis, we first define what the law of contorts is:

> The law of "contorts" is a muddy area, devoid of bright line rules or easy answers as to what conduct constitutes a tort, and what a breach of contract. The acts of a party may breach duties in tort or contract alone, or simultaneously in both. The Texas Supreme Court has observed that it is the nature of the injury which is most helpful in determining which duty or duties are breached.

*Airborne Freight Corp. v. C.R. Lee Enter., Inc.*, 847 S.W.2d 289, 293 (Tex. App.—El Paso 1992, reh'g overruled). "When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone." *Id.* (citing *Sw. Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991)).

Here, the alleged injury for each of the claims Mo-Vac asserted against Total were for profits Mo-Vac claimed it would have made had it been awarded the BSSA. These

alleged lost profits would constitute damages for the alleged breach of contract, not for fraud. Because we have already held that Mo-Vac's fraud claim was improper, though, we dismiss this issue.

### E.      Damages

#### 1.  One-Satisfaction Rule

By its seventh issue, Total claims that the jury's award to Mo-Vac for both breach of contract and fraud violates Texas's one-satisfaction rule. This is "a rule of general acceptation that an injured party is entitled to but one satisfaction for the injuries sustained by him." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). Total asserts that Mo-Vac must assert a remedy, either under contract or tort (fraud), as Texas law prohibits recovering multiple monetary awards for the same injury. *See Tony Gullo Motors, LP v. Chapa*, 212 S.W. 3d 299, 303 (Tex. 2006).

Here, we have determined that Mo-Vac's breach of contract and fraud claims were not viable. Mo-Vac's only recovery, therefore, is for Total's breach of confidentiality agreement. We thus dismiss this issue, as there is no violation of the "one-satisfaction" rule.

#### 2.  Attorney's Fees

Section 38.001 of the Texas Civil Practices and Remedies Code sets forth the rules regarding attorney's fee cases. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2010). This statute provides that, "a party may recover reasonable attorneys' fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for breach of an oral or written contract." *Id.* The

13

phrase "a valid claim" has been interpreted to mean that a party must first be awarded damages before it may be awarded attorney's fees. *See Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). The Texas Supreme Court has held that a "party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages" before it can claim fees under section 38.001. *Id.*

Here, we have held that no enforceable contract existed between Total and Mo-Vac because of the statute of frauds. *See* TEX. BUS. & COMM. CODE ANN. 24.01. Consequently, Mo-Vac was not entitled to recover damages from the breach of that contract, or from the fraud that allegedly occurred in relation to that contract. Because no damages could be awarded, Mo-Vac was not entitled to attorney's fees on the breach of contract or fraud issue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8); *Green Int'l*, 951 S.W.2d at 390. Mo-Vac is, though, still entitled to its attorney's fees related to Total's breach of the confidentiality agreement. We partially sustain Total's ninth issue.

### 3. Pre-judgment Interest

The trial court awarded pre-judgment interest on Mo-Vac's awards for breach of contract, fraud, and breach of the confidentiality agreement. Total, in its tenth issue, contends that the award of prejudgment interest was error. Because we have concluded that Mo-Vac was not entitled to sue under its contract or fraud claims, this issue is moot.

We must determine, though, if Mo-Vac is still entitled to its pre-judgment interest on the breach of confidentiality claim, though. Texas Finance Code section 304.102 provides that prejudgment interest is required in cases involving "wrongful death, personal injury, or property damage." *See* TEX. FIN. CODE ANN. § 304.102 (West 2006).

14

Here, the only classification Mo-Vac's recovery might fall under would be "property damage"; however, the Texas Supreme Court has held that "property damage cases" should "only include claims for damage to tangible property, not economic loss or loss of economic opportunity." *See Johnson & Higgins v. Kenneco Energy*, 962 S.W.2d 507, 530 (Tex. 1998). Accordingly, because the damages for Mo-Vac's breach of confidentiality claim are for economic loss, we sustain Total's tenth issue.

### III. MO-VAC'S ISSUE

By a single cross-issue, Mo-Vac asserts that the trial court erred as a matter of law when it admitted evidence of Mo-Vac's and Glynn Andrews's, Mo-Vac's sole owner and shareholder, wealth.

The admission and exclusion of evidence is within the trial court's sound discretion. *See Bay Area Healthcare Group Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007)*; City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1994). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles." *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995). The trial court's ruling should only be reversed if it was arbitrary or unreasonable. *See id.*; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

To constitute reversible error, this Court must find that the district court's errors probably caused the rendition of an improper judgment or prevented the party from properly presenting its case. *See Bay Area Healthcare*, 239 S.W.3d at 234; *see also* TEX. R. APP. P. 44.1. The complaining party must show that, when the record is reviewed as a whole, the judgment turns on the particular piece of evidence excluded or

15

admitted. *See City of Brownsville*, 897 S.W. 2d at 753–54. The reviewing court then determines whether the case turns on the evidence excluded by reviewing the entire record. *Id.* at 754. Error in exclusion of evidence does not require reversal if excluded evidence is cumulative of other evidence. *See Williams Distrib. Co. v. Franklin*, 898 S.W.2d 816, 817 (Tex. 1995).

Upon review of the record, we find that the trial court did not abuse its discretion in admitting testimony regarding the finances of Mo-Vac and Glynn Andrews. The jury learned that, in 2005, the first year after Mo-Vac did not receive the BSSA, the company reported a net income of $3.5 million—a net profit the company had not enjoyed since 2001. In 2006, Mo-Vac reported a net income of $3.8 million. This evidence was relevant to the determination of Mo-Vac's alleged damages on their causes of action, if any. We overrule Mo-Vac's single cross-issue.

## IV. POOL'S ISSUES

### A. Jury Charge

Pool, the company to which Total chose to award the BSSA, argues that it is an innocent third-party in this lawsuit. By its first issue, Pool argues that it was reversible error for the trial court to submit a participatory fraud instruction and conspiracy fraud instruction against Pool because of the ". . . complete absence of any pleading ever filed by Mo-Vac alleging any sort of fraud theory on the part of Pool, and the absence of any evidence to support such a theory."

We address the charge issue. Texas Rule of Civil Procedure 278 provides that "the court shall submit the questions, instructions, and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence." TEX. R. CIV. P.

16

278. In general, the standard of review for jury charge error is whether the trial court abused its discretion. *See Texas Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). However, "[w]hether a charge submits the controlling issues in a case, in terms of theories of recovery or defense, is a question of law that we review de novo." *See Alamo Cmty. College Dist. v. Browning Constr. Co.*, 131 S.W.3d 146, 160 (Tex. App—San Antonio 2004, pet. denied) (citing *Cont'l Cas. Co. v. Street*, 379 S.W.2d 648, 651 (Tex. 1964)). In any case, an appellate court may not reverse a judgment based on charge error unless the error is harmful. *See Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749–50 (Tex. 1980). Error is harmful with relation to the jury charge only if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal. *See* TEX. R. APP. P. 44.1.

Having reviewed Mo-Vac's live pleading at the time of trial, entitled "Intervenor Movac Services Company, Inc.'s Fifth Amended Petition in Intervention," we agree with Pool that Mo-Vac did not allege any claims of fraud against Pool. Instead, its claims were limited to business disparagement, conspiracy, and tortious interference with a prospective business relationship. Accordingly, any charge submitted on the issue of participatory or conspiracy fraud against Pool constitutes reversible error because it "caused the rendition of an improper judgment." TEX. R. APP. P. 44.1.

We sustain Pool's first issue. Because we conclude that it was reversible error for the trial court to submit charges against Pool on causes of action Mo-Vac never pleaded, we need not address Pool's second, third, or fourth issues regarding the fraud claims.

**B.    Attorney's Fees**

17

Pool asserts, by a fifth issue, that the trial court erred when it awarded Mo-Vac attorney's fees for its claims against Pool. We, again, refer to section 38.001 of the civil practices and remedies code to determine if an award of attorney's fees is appropriate in this case. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). Because we have held that Mo-Vac could not succeed on its claims against Pool because it never pleaded them in the first place, we sustain Pool's fifth issue.

## V. CONCLUSION

In conclusion, with regard to Total, we do the following:

- Reverse the jury's award of $350,000 in monetary damages and any related pre-judgment interest to Mo-Vac for the improper breach of oral contract claim, and render a take-nothing judgment against Mo-Vac.

- Reverse the jury's award of $150,000 and any related pre-judgment interest to Mo-Vac for its improper fraud claim, and render a take-nothing judgment against Mo-Vac.

- Reverse the award of $200,000 to Mo-Vac, along with any related pre-judgment interest, for Mo-Vac's claim that Total breached its promise to award the BSSA to Mo-Vac if it lowered its price to $4.2 million, and render a take-nothing judgment against Mo-Vac.

- Affirm the award of $100,000, including attorney's fees but not pre-judgment interest, to Mo-Vac for Total's breach of the confidentiality agreement.

- Reverse the award of attorney's fees to Mo-Vac and remand to the trial court to determine the amount of fees earned with respect to its successful breach of confidentiality agreement claim.

With regard to Pool, we

18

- Reverse the judgment and any related attorney's fees and related pre-judgment interest awarded to Mo-Vac for its fraud claims against Pool and render that Mo-Vac take nothing on these claims.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
23rd day of August, 2012.